COUNTY OF CASS V. COUNTY OF SARPY.*

FILED FEBRUARY 6, 1902.   No. 12,183.

Commissioner's opinion, Department No. 3.

1. **Bridge:** STREAM DIVIDING COUNTIES: EXPENSE: CONTRIBUTION. When a public bridge has been constructed across a stream dividing two counties, each county may be compelled, at the suit of the other, to contribute toward the expense of necessary repairs upon the same, although there may be no contract between the counties for the building or repair of the structure.

2. **Amended Statutes:** CONSTRUCTION. An amended statute is to be construed, in its application to subsequent transactions, precisely as though it had been originally enacted in its amended form.

ERROR from the district court for Sarpy county. Tried below before BAKER, J. *Reversed.*

*Jesse L. Root,* for plaintiff in error.

*William R. Patrick* and *Wright & Stout, contra.*

*John M. Stewart* and *M. D. King, amici curiæ.*

*Rehearing allowed. Judgment below affirmed.

Ames, C.

The facts out of which this litigation arose can not be more clearly or more concisely stated than in the manner in which they are set forth in the petition, of which the following is a copy: "That the plaintiff and defendant are corporations organized by virtue of the laws of Nebraska. That in the year 1890 a public wagon bridge was constructed across the Platte river at a point where the said river forms a boundary line between said counties. That the said bridge was constructed with funds furnished by sale of precinct bonds issued by the commissioners of Cass county for the precinct of Louisville, a precinct of said Cass county. Said bridge was not jointly constructed by the parties hereto nor did defendant do anything whatever towards building said bridge. That immediately after the completion of said bridge, and from thence hitherto said bridge has formed a part of the public highways in said counties, has been constantly used by the public and at each end of said bridge a public road connects with said bridge. That in the spring and summer of 1900 the said bridge from constant use theretofore became and was in a dangerous condition; was out of repair. That the said county of Cass on the 1st day of May, 1900, requested the defendant to enter into a joint contract with the plaintiff for the purpose of repairing said bridge and having said bridge so repaired as to be safe for travel. That defendant by its commissioners on the first day of May, 1900, refused to enter into said contract, and refused to repair said bridge or any part thereof, or to do, or cause to be done any act or thing for the purpose of repairing any part of said bridge. Whereupon plaintiff caused J. R. Sheely & Co., bridge contractors, to repair said bridge and put it in a safe condition for travel and said contractor did forthwith cause said bridge to be repaired, completing said work and furnishing material for such repairing, Aug. 31, 1900. That plaintiff on the 4th day of September, A. D. 1900, paid said contractor for such work and material, the sum

of $5,283.86.    That said prices paid were reasonable for
such material furnished and work performed; that all of
such material furnished and work performed were neces-
sary for the proper repair of said bridge.    That one-half of
said bridge is in plaintiff county and one-half thereof in
defendant county.    That on the 7th day of September, A.
D. 1900, plaintiff filed with the county clerk of defendant
county an itemized statement of said work and material
furnished duly verified that said items had been furnished
and work performed; that said account was just and true
and the amount claimed, which was one-half of said ex-
penditure, or $2,641.93 was wholly unpaid after deducting
all just credits.    And such bill so verified was presented on
said day to the commissioners of defendant county, then
in session at the court house at Papillion, and said bill was
refused and disallowed by said commissioners, whereupon
plaintiff gave notice in writing to the defendant's clerk
that plaintiff intended to appeal from said disallowance of
said bill, and later, and about September 18th, 1900, plain-
tiff filed with said clerk its appeal bond which bond with
sureties was approved by said clerk.    Plaintiff alleges there
is due and owing it from defendant because of the premises
said sum of $2,641.93 with 7 per cent. interest from Aug.
31st, 1900.    Wherefore plaintiff prays judgment against
defendant for said sum of $2,641.93 and costs of suit."    A
general demurrer to this petition was sustained, and, the
plaintiff electing to stand thereon, judgment was rendered
dismissing the action and for costs.    The plaintiff seeks to
reverse the judgment by proceedings in error.

It is objected, in the first instance, that the petition is
fatally defective because of omitting to allege that the
contract for making the repairs, for one-half the expense
of which recovery is sought, was let to the lowest bidder.
We think that, if the law required it to be so let, the allega-
tion that the repairs were procured to be made by con-
tract, although, perhaps, too indefinite, is, as against a de-
murrer, a sufficient averment of a valid contract, which
presupposes a letting upon competition by bidders.    The

only questions of law involved in the case, are with respect to the validity and construction of sections 87, 88 and 89 of chapter 78, Compiled Statutes, entitled "Roads." These sections are as follows:

"Sec. 87. Bridges over streams which divide counties, and bridges over steams on roads on county lines, shall be built and repaired at the equal expense of such counties; *Provided,* That for the building and maintaining of bridges over streams near county lines, in which both are equally interested, the expense of building and maintaining any such bridges shall be borne equally by both counties.

"Sec. 88. For the purpose of building or keeping in repair such bridge or bridges, it shall be lawful for the county boards of such adjoining counties to enter into joint contracts; and such contracts may be enforced in law or equity, against them jointly, the same as if entered into by individuals, and they may be proceeded against, jointly, by any parties interested in such bridge or bridges, for any neglect of duty in reference to such bridge or bridges, or for any damages growing out of such neglect; *Provided,* That if either of such counties shall refuse to enter into contracts to carry out the provisions of this section, for the repair of any such bridge, it shall be lawful for the other of said counties to enter into such contract for all needful repairs, and recover by suit from the county so in default such proportion of the costs of making such repairs as it ought to pay, not exceeding one-half of the full amount so expended. (Amended 1881, ch. 77; 1899, ch. 57.)

"Sec. 89. If the county board of either of such counties, after reasonable notice in writing from the county board of any other such county, shall neglect or refuse to build or repair any such bridge, when any contract or agreement has been made in regard to the same, it shall be lawful for the board so giving notice to build or repair the same, and to recover, by suit, one-half (or such amount as shall have been agreed upon) of the expense of so building or repairing such bridge, with costs of suit and interest from the

time of the completion thereof, from the county so neglecting or refusing."

In 1879 the legislature enacted a statute entitled "An act to amend chapter 47 of the Revised Statutes of 1866, entitled 'Roads.'" In 1881 the legislature authorized the preparation and publication of the work subsequently known as the "Compiled Statutes," of which biennial editions have since been issued. By this act of authorization the public acts of the legislature, including the Revised Statutes, were required to "be compiled, arranged and put into chapters, with appropriate heads and titles, and with reference to decisions of the supreme court." This requirement was obeyed, and in all the series of editions of the Compiled Statutes the act first above mentioned has been designated as "Chapter 78—Roads." This heading or title is therefore an authorized conventional substitute for the title of the act itself, and consequently this court has held that a legislative intent to amend an act in such cases is sufficiently expressed by reciting the chapter and heading in the compilation.

In 1881 the legislature passed and the governor approved a measure entitled "A bill for an act to amend section 88, of an act to amend chapter 47, of the Revised Statutes of 1866, entitled 'Roads,' approved March 1st, 1879." This measure did not include a clause expressly repealing the section mentioned, and was therefore void, but in the first and subsequent editions of the Compiled Statutes, until that of 1899, the section, in the form attempted to be given to it by the supposed act of 1881, was substituted for the valid section 88 of chapter 78. In 1899, an act was passed entitled "An act to amend section 88, chapter 78, Compiled Statutes of Nebraska of 1897, and to repeal said original section." It is argued by counsel for defendant in error that this last act is an attempt to amend the void measure of 1881, and that it is therefore itself void. For the reason already given, this contention can not be upheld. The supposed act of 1881 and the above-mentioned error in the publication of the Compiled Statutes were each and both

56

wholly ineffectual for any purpose, and the act of 1899, having an appropriate title and being otherwise in due form, is the first and only amendment of section 88 of the act of 1879. It can not be inferred that the legislature were ignorant of the invalidity of the attempted amend-. ment of 1881, and supposed that they were amending a measure to which they made no reference, rather than the "original section," which they accurately described. The act of 1899 made no alteration in the act of 1879, except to add to section 88 thereof the proviso above quoted. The discussion is thus narrowed to the single inquiry, what was the legislative intent in enacting this proviso? Or, in other words, what is its true construction and effect? What change in the law did it accomplish? That it is to be given some force, if possible, can not be gainsaid. The case has been elaborately briefed and argued for both parties, but the question at issue is of such nature that little, if any, light can be thrown upon it by judicial authorities. Prior to the enactment of the proviso, contracts entered into pursuant to section 88, could, as now, be enforced in like manner as the contracts of natural persons, and, under the provisions of section 89, when such a contract has been entered into for either the building or the repair of a bridge, and either county neglects or refuses compliance therewith, the other may, after giving the specified notice, .expend the amount necessary for construction or repairs, and recover one-half of the same, or such amount as the contract calls for, from the delinquent. The proviso is not a mere duplication of section 89 and must be presumed to have been intended to apply to some state of circumstances concerning which there was no previous enactment. Under the act of 1879, as well as under the amendment, two kinds of contracts are authorized,—one for the building of bridges, and one for the repair of such structures. To the subject-matter of the former of these two classes the proviso makes no reference, but the subject-matter of the latter of them is its own sole subject. It makes no regulation with respect to the construction of bridges, nor

to the repair of them, in instances in which there is an existing contract for. such repair. The plaintiff in error therefore contends that it is, in effect, an independent provision, imposing upon the adjoining counties equal obligations for keeping in repair bridges across streams dividing them, without reference to or limitation by the subject or obligation of contracts, but the defendant in error insists that this is too broad an interpretation, and that, although the effect of the proviso is to impose equal obligations upon the counties to make repairs in the absence of a contract for so doing, it, by its terms, has reference only to "such bridges" as are previously mentioned in section 88, and that they are such only as have become the subject of contract. It is hence insisted that, in the absence of a contract for repairs, a county can compel contribution for the repair of only such bridges as have been built pursuant to contract. But this is at least as far from a literal interpretation of the proviso as is that proposed by the plaintiff in error. Among the bridges mentioned in the preceding part of the section are those concerning which there is a contract for repairs and by section 89 the right of contribution is in such cases limited to the amount stipulated in the contract, but by the proviso the right of recovery is enlarged in all cases to an equitable sum, not exceeding one-half the expenditure, so that the construction proposed by the defendant in error brings the proviso and section 89 into conflict. The subject-matter of bridges over streams dividing two counties is first entered upon in the statute by section 87, which, considered by itself alone, imposes the obligation to build and repair upon both counties equally, and without qualification. Section 88 authorizes the adjustment, regulation and apportionment of the burden by contract, and section 89 provides for the enforcement of the contracts. Under these three sections, as originally enacted, the obligations created by section 87, were so limited and qualified that neither of them could be enforced, except by the voluntary and concurrent action of both counties. In our opinion, the purpose of the pro-

viso is to remove the restriction with respect to the maintenance of bridges across dividing streams, and that the pronominal adjective "such" in the proviso has for its antecedent, not the bridges defined in the preceding part of section 88, but those mentioned in section 87. But the proviso is to be construed in connection with all the legislation upon the subject, and is itself so qualified by section 89, that in cases in which there is a contract for repairs, the extent of recovery is limited to the amount or proportion agreed to be contributed. That is to say, the three sections of the amended statute, as applied to this controversy, should be construed precisely as they would have been construed if the proviso had been a part of the act of 1879 as originally enacted.

For these reasons, it is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings in accordance herewith.

DUFFIE, C., concurring.

By an act approved March 1, 1879, the legislature provided a complete code of laws relating to roads and bridges in this state. Sections 87, 88 and 89 of the act related to bridges over streams which divide counties, and are in the following language:

"Sec. 87. Bridges over streams which divide counties, and bridges over streams on roads on county lines, shall be built and repaired at the equal expense of such counties; *Provided,* That for the building and maintaining of bridges, over streams near county lines, in which both are equally interested, the expense of building and maintaining any such bridges shall be borne equally by both counties.

"Sec. 88. For the purpose of building or keeping in repair such bridge or bridges, it shall be lawful for the county boards of such adjoining counties to enter into joint contracts; and such contracts may be enforced, in law or equity, against them jointly, the same as if entered

into by individuals, and they may be proceeded against, jointly, by any parties interested in such bridge or bridges, for any neglect of duty in reference to such bridge or bridges, or for any damages growing out of such neglect.

"Sec. 89. If the county board of either of such counties, after reasonable notice in writing from the county board of any other such county, shall neglect or refuse to build or repair any such bridge, when any contract or agreement has been made in regard to the same, it shall be lawful for the board so giving notice to build or repair the same, and to recover, by suit, one-half (or such amount as shall have been agreed upon) of the expense of so building or repairing such bridge, with cost of suit and interest from the time of the completion thereof, from the county so neglecting or refusing."

By an act approved March 1, 1881, the legislature attempted to amend section 88 of the foregoing act. The amendatory act is in the following language:

"Section 1. That section eighty-eight (88) of an act entitled 'An act to amend chapter forty-seven (47) of the Revised Statutes of 1866, entitled "Roads"' approved March 1, 1879, be amended to read as follows: Sec. 88. For the purpose of building or keeping in repair such bridge or bridges, it shall be lawful for the county boards of such adjoining counties to enter into joint contracts; and such contracts may be enforced in law or equity against them, jointly, the same as if entered into by individuals, and they may be procceded against jointly by any parties interested in such bridge or bridges, for any neglect of duty in reference to such bridge or bridges, or for any damages growing out of such neglect. *Provided,* That if either of said counties shall refuse to enter into a contract to carry out the provisions of this section for the repair of any such bridge, it shall be lawful for the other of said counties to enter into such contract for all needful repairs and recover by suit from the county so in default, such proportion of the cost of making such repairs as it ought to pay, not exceeding one-half of the full amount so expended. But

the provisions of this act shall apply only to those bridges which have been built, or may hereafter be built by co-operation of the counties separated by said stream."

It will be noticed that this amendatory act is fatally defective, for the reason that the original section attempted to be amended is not repealed. Notwithstanding the in-effectual character of the amendatory act, it was carried forward into the Compiled Statutes of 1881 as section 88 of chapter 78, entitled "Roads." It will be noticed that section 88, as attempted to be amended, is in the precise words of section 88 of the Session Laws of 1879, down to the word "provided" in the amendatory act. So that the Compiled Statutes of 1881, and all subsequent compila-tions of the statute, down to, and including the Compiled Statutes of 1897, contained the original section 88 of the laws of 1879, and in addition to the original section the attempted amendment of 1881, the amendment being the proviso following the word "neglect" in the original sec-tion. By an act approved April 1, 1899, section 88 of chapter 78, Compiled Statutes, of Nebraska, 1897, was amended, the act being in the following form:

"Section 1. That section 88, chapter 78, Compiled Stat-utes of Nebraska of 1897, be amended so as to read as fol-lows: Sec. 88. For the purpose of building or keeping in repair such bridge or bridges, it shall be lawful for the county boards of such adjoining counties to enter into joint contract; and such contracts may be enforced in law or equity, against them jointly, the same as if entered into by individuals, and they may be proceeded against jointly, by any parties interested in such bridge or bridges, for any neglect of duty in reference to such bridge or bridges, or for any damages growing out of such neglect; *Provided*, That if either of such counties shall refuse to enter into contracts to carry out the provisions of this section, for the repair of any such bridge, it shall be lawful for the other of said counties to enter into such contract for all needful repairs, and recover by suit from the county so in default such proportion of the cost of making such repairs

as it ought to pay, not exceeding one-half of the full amount so expended.

"Section 2. That section eighty-eight (88), chapter 78, Compiled Statutes of Nebraska of 1897, be and the same is hereby repealed."

Plainly and undeniably the object of this last amendment was to make both counties liable for the repair of bridges over streams which divide the counties. We have in the above statement undertaken to give a history of this statute, and will now proceed to examine the facts in the case drawing the statute in question.

Cass and Sarpy counties are divided by the Platte river. In the year 1890 a bridge was erected across the river at or near the town of Louisville, in Cass county. The money for erecting the bridge was derived from the sale of bonds by the county of Cass for the precinct of Louisville. There was no agreement between the two counties concerning the building of this bridge, and Sarpy county did not contribute anything toward its erection. After the erection of the bridge, and from that time to the present, said bridge has formed a part of the public highways in said counties, and has been constantly used by the public, each end of the bridge being connected with a public road. In the year 1900 the bridge had become out of repair from constant use, and Cass county, about May 1, of that year, requested the county of Sarpy to enter into a joint contract for the purpose of having the bridge repaired and made safe for travel. The county commissioners of Sarpy county refused to enter into any contract relating to the repair of the bridge, and refused to repair the same or any part thereof, and thereupon the county of Cass caused the bridge to be repaired at a cost of $5,283.86. September 7, 1900, the plaintiff filed with the county clerk of Sarpy county an itemized statement of the work done and material furnished, duly verified, and claiming from said county, one-half the expenditure, or $2,641.93. This bill was rejected by the commissioners of Sarpy county, and this action is brought to enforce its payment. A general

demurrer to the petition was sustained, and, the plaintiff electing to stand thereon, judgment was entered dismissing the action and for costs. From this judgment the plaintiff has taken error to this court.

It is insisted that the amendment of section 88 made by the legislature of 1899 is invalid, for the reason that it sought to amend a void statute, and that the amendment had nothing to operate on. We were at first inclined to this view of the case, but further examination and consideration has led us to the conclusion that such a contention can not be supported. The amendment attempted to be made to section 88 is concededly invalid, for the reason that the requirement of our constitution was not observed, in that the section which it sought to amend was not repealed. The cases holding to these doctrines are so well understood by the profession that reference to them is unnecessary. By chapter 79 of the act of 1881, Guy A. Brown was authorized to compile all the public acts then in force in this state, and to arrange said statutes into chapters, with appropriate heads and titles, and with reference to decisions of the supreme court. Under the authority of this act, Mr. Brown proceeded to compile the statutes, and the result of his work is what is known as the "Compiled Statutes of 1881." The act of 1879, first above referred to, appeared in the Compiled Statutes of 1881 as chapter 78 of that compilation, under the head of "Roads." Section 88 of the act of 1879 appeared in full in the compilation as amended by the act of 1881. As before stated, the amendment attempted by the act of 1881 was the addition of a proviso to the original section, the original section as enacted in 1879 appearing word for word in the Compiled Statutes; but added thereto was the amendment in the way of a proviso. If Mr. Brown, in compiling the laws, had omitted this void proviso, we would then have had the law of 1879 word for word as it was enacted originally, and the question is whether the addition of an attempted amendment which was wholly ineffectual to change or modify the law, made by the compiler wholly

without authority, because the amendment never had any force, can be said to have incorporated into the compilation of 1881 a void statute. We think not. The statute appears in the compilation exactly as it was passed, and the addition thereto of a void amendment made by the compiler, can not in our opinion, have the effect to make void that part of the statute to which the void amendment was attached. If this reasoning is correct, then a reference to section 88 of the Compiled Statutes of 1897 by the amendatory statute passed in 1899 was a reference pointing out a valid section of the statute then in full force, and the amendment of 1899 was not in any sense an amendment of a void or unconstitutional statute. The amendment of 1899 in express terms requires the cost of repairs to county bridges of the character of the one in question to be equally borne by each county. This being the case, the demurrer of the defendant should have been overruled.

By the Court: For reasons stated in the foregoing opinions, it is ordered that the judgment of the district court be reversed, and the cause remanded for further proceedings in accordance therewith.

REVERSED AND REMANDED.