COUNTY OF DODGE v. COUNTY OF SAUNDERS.*

FILED DECEMBER 2, 1903. No. 12,367.

1. **Statute:** CONSTRUCTION. When the legislature speaks of "streams which divide counties," in section 87, chapter 78, Compiled Statutes, it must be taken as referring, not to the entire stream but to some part of or line therein.

2. **Streams:** BOUNDARY LINES. The banks of a river are essential parts thereof, and when a county boundary is fixed at "the south bank," the river may be said to divide the county from the one on the opposite side, within the meaning of section 87.

3. **Counties:** REPAIRS OF BRIDGES: The purpose of said section, and the ones immediately following, is to provide for bridges which are rendered necessary in order to travel from one county into an adjacent one, and to divide the cost between the two, and the statute should be construed, if possible, so as to give effect to the apparent intent of the legislature.

4. **Repairs of Bridges:** RECOVERY. The fact that a resolution, passed by the board of one of such counties, calling upon the other to join in making bridge repairs, designates two bridges, while, after the latter's refusal, a contract is let and recovery sought as to one only, is not fatal.

ERROR to the district court for Saunders county: BENJAMIN F. GOOD, JUDGE. *Reversed.*

*Robert J. Stinson* and *Grant G. Martin,* for plaintiff in error.

*Manoah B. Reese, contra.*

LOBINGIER, C.

This is an action by which Dodge county seeks to compel Saunders county to pay one-half of the amount expended

* Rehearing denied. See opinions, pp. 451, 454, *post.*

for repairs on a wagon bridge across the Platte river south of the city of Fremont. The petition alleges "that the Platte river intervenes between the said plaintiff and defendant counties and divides said counties;" that the bridge in question has been built for twenty-five years and generally used by a large portion of the inhabitants of both counties; "that the said plaintiff and said defendant, both, have been and are now equally interested in the building and the maintaining of said bridge and keeping the same in repair for public travel;" that in 1899, the bridge became unsafe for want of repair, and that the board of supervisors of Dodge county passed a resolution declaring that both said bridge and another at North Bend across the same river were out of repair and unsafe for public travel, and calling upon the board of commissioners of Saunders county to undertake such repairs, jointly, to · fix a time and place for a meeting "and agree upon the amount and character of such repairs, and to provide for the advertisement for bids for such repairs." The resolution further recited that, in case of refusal or failure of the defendant county to respond, "this board will proceed to advertise for bids for such repairs and have the same made, and will hold said Saunders county liable for one-half of the costs for said repairs, as provided by law." It is alleged that a certified copy of this resolution was served on the chairman of the Saunders county board; that said county failed and refused to cooperate with plaintiff, and that thereupon it entered into a contract "in the manner provided by law" for the repair of the bridge south of Fremont. A copy of the notice for bids, the contractor's bid and specifications, and the written contract for the repair of the bridge in question are attached to the petition as exhibits. It is further alleged that the work was done according to contract; that plaintiff filed a bill with the defendant county's clerk for its half of the expenses, which was disallowed by its board of commissioners, and that plaintiff perfected an appeal to the district court. A general demurrer to this petition was sustained, and plaintiff,

electing to stand thereon, brings the case here by petition in error.

Defendant in error contends that the averment, "that the Platte river intervenes between * * * and divides said counties," is a mere conclusion of law and not admitted by the demurrer; that by reason of the statute (Compiled Statutes, ch. 17, art. 1, sec. 24; Annotated Statutes, 4329), which fixes "the south bank of the Platte river" as the southern boundary of Dodge county, no part of the river is in Saunders county; that, therefore, the latter was not liable for the repair of the bridge in question, and that, even if it were, since the resolution called for the repair of two bridges, and the contract was made for but one, there is such a departure and noncompliance with the law as to prevent a recovery, and that, therefore, the petition fails to state a cause of action.

Section 87, chapter 78, of the Compiled Statutes (Annotated Statutes, 6085), provides as follows:

"Bridges over streams which divide counties, and bridges over streams on roads on county lines, shall be built and repaired at the equal expense of such counties; Provided, That for the building and maintaining of bridges over streams near county lines, in which both are equally interested, the expense of building and maintaining any such bridges shall be borne equally by both counties."

The allegation, that the contract for the repair of the bridge was entered into "in the manner provided by law," coupled with the notice, bid and contract itself and the resolution calling upon Saunders county to join in advertising for bids, appear to show a sufficient compliance with the statute requiring the contract to be let to the lowest bidder. At least, we think it should be held sufficient as against a general demurrer, and in the absence of a motion for a more specific statement. Numerous authorities are cited in the able argument of the defendant in error to the effect that, where the bank of a stream is fixed as the boundary of land, no part of the bed of water of the stream is included. We do not understand that

Dodge county concedes to Saunders county any rights or jurisdiction over the bed or water of the Platte river.

When the legislature speaks of "streams which divide counties," does it mean the whole stream? If so, there is, probably, no stream in the state to which the statute could apply. In fixing the boundaries of counties bordering on streams, the legislature has used the phrase, "the middle of the channel," or "the south bank." In no case has it fixed the entire stream as a boundary line between counties. Indeed, a moment's reflection will demonstrate that it could not safely have done so. For, if the entire stream were made the boundary, there would be left a neutral zone subject to the jurisdiction of no county. When, therefore, the legislature, after fixing these boundaries, in the language above noticed, refers to "streams which divide counties," it must be understood as meaning streams in which are situated the boundary lines which divide counties. And this is the practical construction of the phrase, adopted by this court in *Cass County v. Sarpy County*, 63 Neb. 813. The statute (Compiled Statutes, ch. 17, art. 1, sec. 68; Annotated Statutes, 4379) fixes "the middle of the said main channel of said Platte river" as the south line of Sarpy county. Literally speaking, therefore, the Platte river, that is, the entire Platte river, does not "divide" the counties of Cass and Sarpy; it is only "the middle of the main channel" which divides them. Nevertheless, it was held, and we still think rightly, that section 87, above quoted, is applicable to these two counties, which are divided, not by the entire river, but only by an imaginary line in the river.

Such is also the construction placed upon a similar statute by another court of high standing. In *Keiser v. Commissioners of Union County*, 156 Pa. St. 315, a case which we shall have occasion to refer to again, the court so construed a statute which speaks of "a stream forming the boundary line between two counties," and it is said in the opinion:

"A stream is equally the boundary whether the line is

at its middle or its edge, and, on the other hand, a stream is equally between two counties whether it is all in one or half in each. Accurately speaking, as the learned judge below points out, there is no stream between counties, for that implies something interposed which is not part of either. But in the popular and ordinary use of language, which the legislature is presumed to intend, between two counties means having one on one side and another on the other, and that is exactly the meaning of forming the boundary line between counties."

If we are correct, then, in our conclusion that the phrase, "streams which divide counties," includes all streams which contain or in which are situated the boundary lines between counties, we are next to inquire whether the Platte river contains the boundary line between Dodge and Saunders counties? Or, in other words, whether that boundary line can be said to be situated in the river? The statute, as we have seen, fixes the line as the south bank. Is the bank, then, no part of the river? Mr. Gould, in his authoritative work on Waters (3d ed.), sec. 41, says: "Every river consists of: (1) the bed; (2) the water; (3) the banks or shores." Our attention is called to a distinction in some of the cases between "bank" and "shore," but it does not seem material to our present inquiry. Mr. Justice Wayne, delivering the opinion in *Alabama v. Georgia*, 23 How. (U. S.) 505, determining the precise boundary between two states which are separated by a river, says, quoting from Grotius:

"A river that separates two jurisdictions is not to be considered barely as water, but as water confined in such and such banks, and running in such and such channel. Hence, there is water having a bank and a bed, over which the water flows, called its channel, meaning, by the word channel, the place where the river flows, including the whole breadth of the river."

In *Starr v. Child*, 20 Wend. (N. Y) 149, Cowen, J., says:

"The bank and the water are correlative. You can not own one without touching the other."

The word "watercourse" is synonymous with stream, and in *Luther v. Winnisimmet Co.*, 9 Cush. (Mass.) 171, Bigelow, J., in a charge to the jury, afterwards approved on appeal, said:

"A watercourse is a stream of water, usually flowing in a definite channel, having a bed and sides or banks."

Indeed, it seems to us that the correct conclusion is well summarized in the argument for plaintiff in error in *Howard v. Ingersoll*, 13 How. (U. S.) 380, 391, as follows:

"A river, then, consists of water, a bed, and banks; these several parts constituting the river, the whole river. It is a compound idea; it can not exist without all its parts. Evaporate the water, and you have a dry hollow. If you could sink the bed, instead of a river you would have a fathomless gulf. Remove the bank, and you have a boundless flood."

We have not overlooked the cases where grants bounding on the bank are said to exclude the stream. The language thus used is invariably *dicta*, and is employed, incidentally, in discussing entirely different questions than whether the bank of a river is to be treated as a part of it. It seems to us more logical, and more in accordance with approved legal definitions, to hold that the south bank of the Platte river is to be treated as a part of the river; that "streams which divide counties" include any part of or point in such streams, and that, therefore, the Platte river divides Dodge and Saunders counties, quite as much as if the boundary was the thread of the stream, the *filum aquæ*, instead of the south bank.

We are strengthened, then, in this conviction, when we consider, as we must, the intent and purpose of the legislature in enacting this statute. The purpose, evidently, was to provide for the building and repair of bridges required in order to travel from one county into an adjacent one, and to impose the expense equally upon both, on the theory that the bridge would be used about equally by the inhabit-

ants of the two counties. It is apparent that, for this purpose, it is quite immaterial whether the boundary line is the thread of the stream or the bank. The bridge would be just as necessary in the one case as in the other, and there would be the same reason for dividing the cost. With the policy of such legislation, we are not here concerned. It may be true, as suggested in the argument of defendant in error, that the bridge in question is not a benefit to part of the inhabitants of Saunders county; that it is even detrimental, in diverting trade into Dodge county, though the demurrer admits the averment in the petition that the bridge is "used by a large portion of the inhabitants of both counties." It may also be true that the statute confers upon counties power in locating bridges which may be used, or rather abused, to the injury of neighboring counties. But, whether the policy of the act has proved beneficial, or otherwise, is a question for the legislature alone. Our duty is simply to ascertain its intent and permit it to be carried out, as far as possible. To hold that this case is not within the terms of the statute because the boundary is fixed at the south bank instead of the thread of the stream would, we think, be to disregard that intent. Dodge county is not the only one whose boundary is fixed at the south bank. Indeed, nearly one-third of the counties which border on streams flowing wholly within the state are so bounded. Can it be supposed that the legislature intended to exempt all of these from a policy which, on its face, appears to be uniform?

We prefer to think with the supreme court of Pennsylvania, in the case above referred to, that it is "the popular and ordinary use of language which the legislature is presumed to intend," rather than to adopt a construction which would nullify the statute in so large a proportion of the cases to which it was apparently intended to apply. In *Cass County v. Sarpy County,* 63 Neb. 813, 823, it is said that "Cass and Sarpy counties are divided by the Platte river," although we have seen that, technically speaking, they are divided only by the "middle of the main

channel" of the river. So, "in the popular and ordinary use of language," it may be said that the Platte river divides Dodge and Saunders counties, though the technical boundary line is the south bank of the river.

We have referred to *Keiser v. Commissioners of Union County*, 156 Pa. St. 315, and we close our discussion of this branch of the case with a further reference to it, because it seems to us so pertinent to the case at bar and so fully to support the foregoing views. It was an action to compel the commissioners of Union county to cooperate with the commissioners of Northumberland county in building a bridge across the Susquehanna river. The statute authorizes joint construction of bridges "where the stream or river runs between counties." There would seem to be more room in the Pennsylvania case than here for the contention made by defendant in error, for Union county is described as "lying on the west side of the river Susquehanna," thus indicating that it included no part of the river. And, yet, the court holds that the statute is applicable, and says also:

"A stream is equally the boundary line whether the line is its middle thread or its westernmost ripple. To find the boundary you must find the stream, and then the part of it defined as the line, but wherever that is it is the stream, and it is the boundary only because of that fact.' No matter whether the boundary is the middle or the edge of the stream, the bridge must connect with both banks, and the moment it does so, even if only with an abutment, there is no longer any one county in which it is located. * * * The obvious meaning of the statute * * * is that * * * bridges over streams forming boundary lines between counties, or running between counties (that is, having one county on one side and another county on the other side), shall be rebuilt by the commissioners of the 'respective counties.' "

We find ourselves also unable to agree with the eminent counsel for defendant in error in his contention that there was a fatal departure in the fact that the resolution, call-

ing upon Saunders county to join in making the repairs, designated two bridges, while the contract was let and recovery sought as to but one. The statute points out no particular mode of procedure, and we can not see that defendant in error was in the least prejudiced by the course pursued. If Dodge county had been willing to accept one-fourth instead of one-half of the amount expended for the Fremont bridge, it would not be questioned, we presume, that only the taxpayers of Dodge county could complain. Moreover, had this been an ordinary action in the district court, and had the claims for the two bridges been divisible, as we think they were, plaintiff could have sued on its claim for the one bridge alone. On the other hand, had the claims been indivisible, it could still have sued for a part, on condition of being barred from any further action as to the remainder. We can not think that any stricter rule should be applied in a proceeding of this kind than in an ordinary action at law.

Having reached the conclusion that the Platte river "divides" the two counties appearing in this action, it is unnecessary to consider whether the other clauses of section 87, chapter 78, are also applicable, though that question is discussed in the briefs, and the petition avers, as we have seen, that both parties "are equally interested in the building and maintaining of said bridge." From our examination of the first clause of section 87, we are compelled to conclude that the demurrer should have been overruled, and we recommend that the judgment be reversed and the cause remanded with directions that such an order be entered.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings in accordance with said opinion.

REVERSED.

The following opinion on motion for rehearing was filed October 5, 1904. *Rehearing denied:*

1. **Counties:** REPAIRS OF BRIDGES. Under the provisions of section 87, chapter 78, Compiled Statutes, 1901, a county may be required to contribute toward the repair of a bridge abutting in such county although it is located mainly within the territorial jurisdiction of an adjoining county.

2. **Stream Defined.** The word "stream" as used in said section is used in a general sense, and includes rivers and smaller courses of running water.

SEDGWICK, J.

Some of the propositions discussed in the briefs and upon the oral argument upon the motion for rehearing seem worthy of further notice.

1. The bridge in question being confessedly located mainly in Dodge county, it is contended that the legislature would not have authority to require Saunders county to expend the funds of that county in repairing a bridge outside of its jurisdiction; but this proposition seems not to be supported by authority. The second paragraph of the syllabus of the opinion in *Washer v. Bullitt County*, 110 U. S. 558, 28 L. ed. 249, is:

"At the common law and also by statute, a county may be required and authorized to build and maintain, at its own expense, a bridge or highway across its boundary line, and extending into the territory of an adjoining county."

The opinion in *County of Mobile v. Kimball*, 102 U. S. 691, 26 L. ed. 238, which announces the same doctrine, is approved and followed, and in the opinion, quoting from the opinion in a Maryland case, it is said:

"A county is one of the territorial divisions of a state created for public political purposes connected with the administration of the state government, and being in its nature and objects a municipal organization, the legislature may exercise control over the county agencies, and require such public duties and functions to be performed by them as fall within the general scope and objects of the municipal organization."

2. If then, it is competent for the legislature to require a county to bear the expense of repairing a bridge that is not located within its boundaries, we have in this case only to consider what the intention of the legislature was. Of course, the same rules and principles are to be applied in ascertaining the boundaries of corporations such as counties, and in the construction of the statutes and other public acts, that should be applied in ascertaining correct boundaries between lands owned by individuals, whether established by public acts or private contract. Where a river, brook, stream or highway is mentioned generally as a boundary line, the same rule is to be applied to each; that is, the thread of the stream of the river or brook, and the center of the street or highway, is the boundary line. Again, if any particular place or specific line is mentioned as the boundary, that place or line becomes the monument and excludes all beyond. If a bank of a river or stream is mentioned as the boundary, then the body of the water in the river or stream is excluded from the territory nearest to the bank designated as such boundary. The fact that the body of the water of the river is in Dodge county, and that the bridge will therefore be mainly outside of the territorial limits of Saunders county, is not an important factor in determining the issue. The question is, what is the meaning of the expression, "Streams which divide counties."

The word "stream" which occurs in the statute has two distinct uses. The first and most important meaning of this word is "A course of running water, a river, rivulet, or brook." Century Dictionary. It is there also stated in connection with that definition, "All rivers and brooks are streams and have currents." Another and more technical use of the word "stream" is to distinguish the volume of water of a river, rivulet or brook from the banks and bed; thus, as suggested in the former opinion herein, a river is said to consist of three parts: the bed, the bank and the stream. In this latter sense of the word the stream in question is undoubtedly entirely in Dodge

county, since the boundary line is on the south bank and the stream is wholly north of the south bank. This meaning of the word "stream" is suggested in the brief as the one intended by the legislature, and it is therefore insisted, and undoubtedly correctly, if the word is used in this sense that, since the south boundary line of Dodge county is on the south bank, the stream or the water itself is wholly in Dodge county, and therefore can not be said to divide two counties. It seems clear to us that this is not the sense in which the legislature used the word stream in this statute. We think that the purpose of the legislature, as well as the language of the statute, would indicate a broader meaning. It was, we think, rather intended that the statute should apply to bridges over rivers and, also, to bridges over smaller water courses that did not carry a sufficient volume of water to cause them to be denominated rivers. In this statute, then, the legislature used the word in the sense of "a course of running water, a river, rivulet or brook;" and if, as is well pointed out in the former opinion, the bank of a stream used in this sense is as much a part of the stream itself as is the bed or the volume of water which it carries, then the stream divides counties, since the boundary line lies in a part of the river. The bank is that part of the river or stream which retains the water, and it seems, therefore, reasonable that the word stream as used by the legislature when applied to a river, as in this case, must be construed to mean the whole of the river, including the bank as well as the water and the bed, and, within that meaning, the boundary line here lies within a part of the river, to wit, the bank, so that the river divides the two counties in the sense intended by the legislature.

The whole question is not without difficulty, but the construction of the statute adopted in the opinion appears to be the more reasonable one, and the motion for rehearing is therefore overruled.

REHEARING DENIED.

The following opinion on second motion for rehearing was filed January 5, 1905. *Rehearing denied:*

PER CURIAM.

In the motion for rehearing it is said that, lying within the river, there is a large island situated wholly in Dodge county, and that a part of the Platte river on the north of this island is crossed by the bridge in question; and it is contended that it would be unjust and is not intended, by a fair construction of the statute in question, that Saunders county should be required to build, or share in building or in repairing, the bridge over the north part of the river. This question has not been presented to the court and is not determined.

The case is submitted upon a general demurrer to the petition. If the defendant raises the question by answer, its solution will, apparently, depend upon the intention of the legislature as to the application of the word stream, as used in the statute, to such conditions. The conditions may be such that each part of the river, that part lying on the north side and that part lying on the south side of the island, should be considered a stream, as that word is used in the statute, but we do not find it necessary to express an opinion upon this question in the present condition of the record. The motion for rehearing is overruled.

REHEARING DENIED.