STATE, EX REL. PETER MORTENSEN, V. WILLIAM J. FURSE.

FILED JUNE 26, 1911.   No. 17,019.

1. Officers: FILLING VACANCIES. Under the provisions of section 20, art. III of the constitution of this state, vacancies in offices created by that instrument must be filled in compliance with the provisions of the general law upon the subject of filling vacancies, when no provision is made for that purpose in the constitution.

2. Constitutional Law: AMENDMENTS TO CONSTITUTION. When an amendment to the constitution is legally adopted, it becomes a

part of that instrument, and in its application to subsequent transactions must be considered precisely as though it had been originally adopted as a part thereof in its amended form.

ORIGINAL application in the nature of *quo warranto* to determine the right of respondent to the office of state railway commissioner. *Demurrer to petition sustained.*

*J. B. Strode* and *E. J. Clements,* for relator.

*Albert & Wagner, contra.*

REESE, C. J.

Relator filed his information in the nature of *quo warranto* in this court in the exercise of its original jurisdiction against defendant William J. Furse, in which, in addition to that of relator's eligibility, it is alleged, in substance, that on and prior to the 16th day of October, 1910, one William Cowgill was and had been duly elected and acting as one of the state railway commissioners of this state; that on the said 16th day of October he died, and his office then became vacant; that thereupon relator was duly nominated by petition as a candidate for said office to fill said vacancy; that the fact of the death of said William Cowgill and of the vacancy in the office caused thereby and of affiant's nomination to fill said vacancy were published in the various state and county papers throughout the state, and thus became matters of general knowledge to the people of the state on and before the ensuing election; that the secretary of state thereupon duly certified the name of relator as nominee for said office to the county clerk of each county of the state, and relator's name was duly printed upon the sample and official ballots used and cast at the general election (held on the 8th day of November, 1910) in nearly all of said counties; that at said general election there were cast 79,088 votes for the office of state railway commissioner to fill said vacancy, all of which said votes were received by relator; that said votes were duly certified to the secretary of state,

and by him to the speaker of the house of representatives, who, in accordance with law, on the 5th day of January, 1911, in the presence of both houses of the legislature then in session, opened and published the returns of the election of executive state officers when it was found and officially announced that relator had received 79,088 votes for railway commissioner to fill the unexpired term, there being no other votes cast or canvassed for said office; that thereupon relator accepted said office, qualified by taking the prescribed official oath, and filed said oath with the secretary of state; that on the 7th day of November, 1910, the governor appointed defendant William J. Furse to said office to fill said vacancy until the next general election after his said appointment, when defendant qualified, took possession of the office, and entered upon the duties thereof; that, notwithstanding relator's election and qualification and his desire to discharge the duties thereof, the defendant continues to hold said office and to usurp the same, and refuses to surrender to relator. The prayer is for judgment that defendant is not entitled to hold said office, that he be ousted therefrom, and that relator be installed therein.

To this information defendant has filed a general demurrer, the grounds therefor being that the facts stated in the information are not sufficient to constitute a cause of action, are insufficient to entitle relator to the relief prayed for, and are not sufficient to sustain a judgment of ouster. The case has been briefed and argued upon the demurrer and the questions of law presented.

The decision depends upon whether the clause or provision in section 1, art. VIII, ch. 72, Comp. St. 1909, providing that "the governor shall fill all vacancies in the office of railway commissioner by appointment, and the persons so appointed shall fill said office until the next general election after his said appointment," is to be held as complete within itself and exclusive of all other laws upon the subject of filling vacancies in said office by the governor, or whether, if valid, it is to be considered in

connection and *in pari materia* with the provisions of chapter 26, Comp. St. 1909, upon the subject of vacancies in office, and the filling of the same. By that chapter (section 103) it is provided that vacancies in state offices, except reporter of the supreme court, shall be filled by the governor where no other method is provided. By section 105 appointments "shall be in writing, and continue until the next election at which the vacancy can be filled and until a successor is elected and qualified, and be filed with the secretary of state." By section 107 it is provided that vacancies occurring in any state office "thirty days prior to any general election, shall be filled thereat." If this law is to be applied to the present case, since the death of Mr. Cowgill occurred less than 30 days prior to the next general election to be held November 8, ·of the same year, there would seem to be no question but that the appointment of defendant would continue until the next succeeding general election, which would be in November, 1911.

It is argued by relator that the provision of section 1, art. VIII, ch. 72, Comp. St. 1909, which we have herein above quoted, is complete within itself, containing all that is necessary for the guidance of the governor in filling the vacancy, and was not intended by the legislature as having any connection with, or relation to, the then existing law. Upon the other hand, this theory is combated by defendant for the reason that, if this should be held to be true, it cannot be applied, because the provision for filling vacancies is not within the title to the act, and is unconstitutional and void. This contention is not without reason in its support; but, as we view the questions involved in this case, we do not deem it necessary to pass upon that point, and it will not be decided. Should we hold that provision void as unconstitutional, we would have only what is contained in chapter 26, *supra,* as conferring authority upon the governor to make the appointment. Should we hold the provision valid, and that the two are *in pari materia* and to be construed together, the result would be

the same, except that it would appear that the legislature, by the quoted clause, intended to remove all doubt by recognizing the power of the governor to act. Should we hold that clause valid and exclusive, we would have to hold that, had Mr. Cowgill died three days before the election and the governor had filled the vacancy one day before the election, as he did in this case, and upon a petition being filed and the information given to the people of the state generally, as alleged in the petition, the appointment would only hold "until the next general election after his said appointment," which would be the next day. If no part of chapter 26 is to be applied, the appointee could not hold "until a successor is elected and qualified," and the direction that the written appointment should be filed with the secretary of state would have no application.

What about these details? If we cannot take them from the law as it existed prior to the enactment of the railway commission law, we are left without a guide. We agree with counsel for relator that the office of railway commissioner is, under the constitution, to be classed as an executive office. Of this we think there can be no doubt, as it can neither be said to be legislative, nor judicial, and the three classes are the only ones given by that instrument. *In re Railroad Commissioners,* 15 Neb. 679. The fact that railway commissioners are not provided for in the constitution until the amendment thereof by the adoption of the joint resolution of 1905 can make no difference, since the language of the constitution in the classification of the departments of the state government is broad enough to include all offices thereafter created, whether by the amendment of that instrument or by legislative enactment. The office under consideration being an executive office, and the clause contained in the railway commission law not providing for the details of appointments to fill vacancies, we must hold that, if valid, it must be treated as providing only in a general way that the duty of appointing a temporary successor to a deceased member of that commission devolves upon the governor, and con-

strued in connection with the existing law upon that subject, and therefore the power to elect a successor at the next general election does not exist unless the vacancy occurs "thirty days prior to any general election." If that length of time does not intervene, the vacancy must be filled by appointment, "and the person so appointed shall fill said office until the next general election after his said appointment."

In support of the contention by relator that the quoted clause in the railway commission law is exclusive upon the subject of filling vacancies in the office of such commission, we are cited to *State v. Walker*, 30 Neb. 501, and *State v. Rankin*, 33 Neb. 266. Judging by the syllabus of the former case, there was but one question before the court for decision, which was whether the appointment of a county attorney to fill a vacancy in that office was sufficiently made by entering the fact upon the records of the proceedings of the board, and failing "to make, sign and file with the county clerk a written appointment, separate and distinct from the record of their proceedings." It was held that, as the county clerk was the custodian of the records of the county board and such records were kept in his office, there was a sufficient compliance with the law. The discussion of the manner of filling vacancies as provided by section 105 of the election law seems to be aside from the true question involved, and we are unable to see how it can be said to control this case.

While we do not think that, were the questions decided in the latter case (*State v. Rankin*, 33 Neb. 266) before us in the first instance, we would have agreed to all that is said in the opinion, yet it seems to us that this case is to be distinguished from that one. However, it is our opinion that the general law providing for the filling of vacancies was intended as a regulation for all vacancies, and the fact that an office is created after the enactment of the law would be as much within its provisions as though it existed at the time the general law was passed, unless full provision were contained in the law creating the office.

45

To the holding that the appointee would hold until the expiration of the term for which the original incumbent was elected, without reference to how many general elections should intervene, unless specially so provided by the creating statute, we cannot give our assent. If such is the law, it would make no difference how long the unexpired tenure of office, the appointee would hold until the end of the term, which might be any number of years, notwithstanding the fact that a half dozen general elections intervened. This is so directly opposed to the spirit and policy of the state government as to challenge its correctness. It is the known policy of the state and its laws to permit the people to elect those who are to serve them as their officers. Hence the requirement that, if.30 days or more intervene between the occurrence of the vacancy and the next general election, the remainder of the term shall be filled by election. To hold that a general law can be applied only to conditions as they exist at the time of its enactment would be subversive of all rules of construction. The only provision in the law creating the office of county attorney for the filling of a vacancy in the office is that the county board shall appoint a successor who shall give bond and discharge the duties of the office until his successor shall be elected and qualified. This left all other details to be governed by the general law providing for filling vacancies. To the mind of the writer nothing could be plainer. The conclusion of the writer of that opinion is that, "the lawmakers having specially provided the method of filling vacancies in said office, the only conclusion we can reach is that it is exclusive of all others." This would be true had the legislature done so, but the application should be limited to what the lawmakers did, which was that the county board should appoint and the appointee should hold the office until the election and qualification of "his" successor. All other matters are left to the general law.

However, it is our opinion that a distinction can be drawn between that case and the present one by reason

of the fact that the provision for the filling of vacancies in the office of county attorney is contained within the act creating the office, and for that reason the decision might be sustained, while in this case the office was created by the constitution, and by virtue of that instrument the general law for filling vacancies should be applied. Section 20, art. III of the constitution, provides: "All offices created by this constitution shall become vacant by the death of the incumbent, by removal from the state, resignation, conviction of a felony, impeachment, or becoming of unsound mind. And the legislature shall provide by general law for the filling of such vacancy, when no provision is made for that purpose in this constitution." It must be conceded that no provision is made in the constitution for the filling of a vacancy in the office of railway commissioner; it being silent upon that subject. The case is therefore brought within the provisions of the constitution last above quoted and must be governed by it, and the general law applied. The fact that the office of railway commissioner was created by a subsequent amendment to the constitution can make no difference, for, when adopted by the people, it becomes as much a part of that instrument as if contained therein when first adopted. In its relation to matters which have arisen subsequent to the adoption of an amendment the constitution must be construed as a whole, all of whose provisions are of equal validity. 4 Ency. U. S. Supreme Court Rep. 48. It is believed that the same rule should be applied as to an amendment of a statute, and we held in *Cass County v. Sarpy County*, 63 Neb. 813, that "an amended statute is to be construed, in its application to subsequent transactions, precisely as though it had been originally enacted in its amended form."

It follows that the demurrer to the petition must be, and is, sustained.

DEMURRER SUSTAINED.

SEDGWICK, J., not sitting.