DAWSON COUNTY, APPELLANT, v. PHELPS COUNTY, APPELLEE.

FILED JUNE 16, 1916. No. 16,861.

1. Counties: REPAIR OF BRIDGES. Section 87, ch. 78, Comp. St. 1909, requires a county to contribute toward the repair of a bridge across the Platte river which extends into such county, although it is located mainly within the adjoining county.

2. ———: ———: "STREAM." The word "stream," as used in said section, is used in a general sense, and applies to rivers and smaller courses of running water. *Dodge County v. Saunders County*, on rehearing, 70 Neb. 451.

APPEAL from the district court for Phelps county: HARRY S. DUNGAN, JUDGE. *Reversed.*

*T. M. Hewitt* and *E. A. Cook*, for appellant.

*Frank A. Anderson, contra.*

HAMER, J.

This action was brought by Dawson county against the county of Phelps to recover for repairs made to a bridge across the Platte river at a point south of the village of Overton, where the river divides the two counties. In the trial of the case, after the evidence had been submitted by the parties, the plaintiff county and the defendant county each submitted a motion for an instructed verdict. The court thereupon instructed the jury to return a verdict for the defendant county.

One of the contentions of the defendant county was that the village of Overton, in the plaintiff county, was near the bridge, while in the defendant county there was no town nearer than ten or twelve miles. From this it would seem that the supervisors of the defendant county took the view that, because the bridge was a convenience to the residents of the defendant county to enable them to trade in the plaintiff county, and because the plaintiff county by reason thereof secured a portion of defendant county's trade, defendant county should be relieved of its share in the maintenance of the bridge. While bridges across a river may be built with a view to the convenience of the people, and their construction may enable the people of one county to receive more trade than another, it is doubtful if such fact can be successfully urged as a reason why the law imposing upon two counties the joint obligation of keeping up a bridge should be abrogated. The plaintiff has appealed from a judgment in favor of defendant. The bridge as originally constructed was a toll bridge, and in 1890 was surrendered by the bridge company which constructed it to Dawson county, and was accepted by the same, and that county declared the bridge to be a free bridge.

11

In the summer of 1908 the plaintiff county gave notice to the defendant county of needed repairs, and requested the defendant county to enter into a contract for the repair of the bridge. No action was taken by defendant, and plaintiff entered into a contract, as provided by the statute, and paid the contractor for the repairs which he had made, and filed its claim with the defendant county for one-half the cost thereof. The repairs made were of a substantial character and were quite extensive. It is shown by the evidence that the bridge was unsafe at the time the contract for the repairs was made; that holes had broken through the floor because the boards were worn; and that it was necessary to put the bridge in a good state of repair for public travel. It was also shown that the bridge was part of the public road, and that there was a highway in each county extending to the bridge. The bridge is in a populous part of the state, and because it is a part of the public road is much used. The expense incurred seems to have amounted to $5,322.90, and it is claimed by the plaintiff that Phelps county should pay one-half of the same. There seems to be no issue raised as to the sufficiency of the notice served upon the defendant county to contribute to the repair of the bridge. There have been many bridge contests in this state not wholly dissimilar to the one under consideration.

The claim was rejected by the county on July 13, and notice of the action of the board was mailed to the county clerk of Dawson county July 14, and was received by him July 15. Notice of appeal was given the county clerk of Phelps county, and an appeal bond given and approved July 24. It is contended by appellee that an appeal was not taken in time, and that the court was therefore without jurisdiction, and that whether the appellant is right or wrong on the merits of the case is immaterial, because the appeal was not taken in time. An examination of the statute covering appeals for disallowed claims against counties does not disclose that any time is now provided by the statute when the notice of appeal must be served

and bond executed.  This change of the law occurred in an act of the legislature of 1907.  Prior to that time it was necessary, after serving notice upon the county clerk, to file an appeal bond within 20 days after the decision of the county board.  As the statute stood at the time of the appeal in this case, no time was fixed within which notice of the appeal must be given and an appeal bond filed.  It must then be taken that a party appealing would have at least a reasonable time within which to serve his notice and perfect his appeal, and the time consumed in this case does not seem to be an unreasonable time.

. Was the court right in directing a verdict for the defendant?  The statute fixes the north boundary of Phelps county and that part of the south boundary of Dawson county (which lies north of Phelps county) "as the middle of the south channel of the Platte river."  It is urged by appellee that the "south channel" of the Platte river at the point where it is crossed by the bridge in question is a very narrow channel, being bounded by the south bank of the Platte river on the south, and an island in the Platte river on the north, which said island lies wholly within said Dawson county; and it is contended that, inasmuch as it was not shown that any part of the repairs made on the bridge were made upon the part thereof between the south bank and this island, the verdict is right.

The statute governing the construction of bridges over streams between counties (Comp. St. 1909, ch. 78, secs. 87-89) provides:

"Section 87. Bridges over streams which · divide counties, and bridges over streams on roads on county lines, shall be built and repaired at the equal expense of such counties; provided, that for the building and maintaining of bridges over streams near county lines, in which both are equally interested, the expense of building and maintaining any such bridges shall be borne equally by both counties.

"Section 88. For the purpose of building or keeping ·in repair such bridge or bridges, it shall be lawful for the

county boards of such adjoining counties to enter into joint contracts; and such contracts may be enforced, in law or equity, against them jointly, the same as if entered into by individuals, and they may be proceeded against, jointly, by any parties interested in such bridge or bridges, for any neglect of duty in reference to such bridge or bridges, or for any damages growing out of such neglect; provided, that if either of such counties shall refuse to enter into contracts to carry out the provisions of this section, for the repair of any such bridge, it shall be lawful for the other of said counties to enter into such contract for all needful repairs, and recover by suit from the county so in default such proportion of the costs of making such repairs as it ought to pay, not exceeding one-half of the full amount so expended."

The words "streams which divide counties" have received consideration from this and other courts, and it seems to have been uniformly held that, in arriving at the meaning of the words, not only their literal meaning is to be considered, but the purpose of the statute. Literally the Platte river does not divide Dawson and Phelps counties, because the dividing line is made the middle of the south channel, and part of the river therefore lies in Dawson county and part in Phelps county, and the actual boundary is an imaginary line in the river; but in the statute under consideration, which deals with the construction of bridges across "streams which divide counties," the legislature employed the words in their ordinary sense and *for rivers,* not to an imaginary line in the stream, but to the whole stream, consisting of its bed, the water flowing therein, and the banks or shores thereof confining the water, on one side of which stream lies one county, and on the other side of which stream lies another county. *Cass County v. Sarpy County,* 63 Neb. 813; *Keiser v. Commissioners of Union County,* 156 Pa. St. 315; *State of Alabama v. State of Georgia,* 23 How. (U. S.) 505; *Dodge County v. Saunders County,* 70 Neb. 442.

Nor does it make any material difference that all the

bridge except the south portion is within Dawson county. *Dodge County v. Saunders County,* 70 Neb. 442, on rehearing, 70 Neb. 451. It is said in the syllabus of the first opinion: "The banks of a river are essential parts thereof, and, when a county boundary is fixed at 'the south bank,' the river may be said to divide the county from the one on the opposite side, within the meaning of section 87. The purpose of said section, and the ones immediately following, is to provide for bridges which are rendered necessary in order to travel from one county into an adjacent one, and to divide the cost between the two, and the statute should be construed, if possible, so as to give effect to the apparent intent of the legislature." In the opinion on the rehearing Judge SEDGWICK, delivering the opinion of this court, said: "The bridge in question being confessedly located mainly in Dodge county, it is contended that the legislature would not have authority to require Saunders county to expend the funds of that county in repairing a bridge outside of its jurisdiction; but this proposition seems not to be supported by authority." This court then quotes from the second paragraph of the syllabus of the opinion in *Washer v. Bullitt County,* 110 U. S. 558: "At the common law and also by statute, a county may be required and authorized to build and maintain, at its own expense, a bridge or highway across its boundary line, and extending into the territory of an adjoining county." The court also quotes from the opinion in *County of Mobile v. Kimball,* 102 U. S. 691, announcing the same doctrine; and, quoting from a Maryland case, it is said: "A county is one of the territorial divisions of a state created for public political purposes connected with the administration of the state government, and, being in its nature and objects a municipal organization, the legislature may exercise control over the county agencies, and require such public duties and functions to be performed by them as fall within the general scope and objects of the municipal organization."

In the body of the opinion on the rehearing it is said:

"The fact that the body of the water of the river is in Dodge county, and that the bridge will therefore be mainly outside of the territorial limits of Saunders county, is not an important factor in determining the issue. The question is, what is the meaning of the expression, 'Streams which divide counties.' * * * The bank is that part of the river or stream which retains the water, and it seems, therefore, reasonable that the word stream as used by the legislature when applied to a river, as in this case, must be construed to mean the whole of the river, including the bank as well as the water and the bed, and, within that meaning, the boundary line here lies within a part of the river, to wit, the bank, so that the river divides the two counties in the sense intended by the legislature."

The Overton bridge is none the less a bridge over a stream which divides counties, within the meaning of section 87, ch. 78, Comp. St. 1909. It was undoubtedly the intention of the legislature to make such bridges, which may be equally used by the inhabitants of both counties, a charge upon both counties. These bridges form an important part of the highways of the state, and these highways are very properly made the subject of legislative action. The counties are municipal subdivisions of the state, the creatures of the legislative will, with which the legislature, within constitutional limitations, may deal as in its discretion seems best. When the bridge was acquired from the Overton Bridge Company, Dawson county, by a resolution, undertook the maintenance of the bridge. We do not think this makes any difference, because Phelps county was not a party to the contract between the bridge company and Dawson county, nor was the contract made between the bridge company and Dawson county for the benefit of Phelps county. The inhabitants of Phelps county equally with those of Dawson county enjoyed the use of the bridge, and the bridge is only a part of the public roads of the state, and the legislature has charged the counties on either side of the Platte river with a share of the maintenance of the bridges built over that river. The

resolution of the commissioners of Dawson county accepting the bridge and agreeing with the Overton Bridge Company to maintain and repair it does not excuse Phelps county from the obligation imposed upon it by law. In a very recent case (*Buffalo County v. Hull*, 93 Neb. 586), it was held: "The liability of adjoining counties for repairs of a bridge over a stream between them is fixed by statute, and it is within the power of the legislature to alter or amend the statute in that regard. The conditions and extent of the liability depend upon the statute in force when such repairs are made and the liability incurred."

It therefore follows that the judgment of the district court for Phelps county is wrong, and that it should be reversed.

REVERSED AND REMANDED.