STATE EX REL. BLAIR, APPELLANT, *v.* KUHR, COUNTY ATTORNEY, RESPONDENT.

(No. 6,506.)

(Submitted October 4, 1929. Decided January 13, 1930.)

[283 Pac. 758.]

*Mr. C. F. Morris* and *Mr. Victor R. Griggs,* for Appellant, submitted a brief; *Mr. Morris* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, *Mr. T. H. McDonald,* Assistant Attorney General, and *Mr. Max Kuhr,* for Respondent, submitted a brief; *Mr. Kuhr* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action in mandamus to compel the respondent, as county attorney, to institute an action against the board of county commissioners of Hill county to recover money alleged to have been unlawfully expended by it and to restrain further expenditures under the terms of an alleged contract entered into on the twenty-eighth day of August, 1928, with J. M. Clemenshaw Company of Cleveland, Ohio, by the terms of which the board agreed to pay the sum of $2,425 to that company for reclassifying, re-appraising, and revaluing all real property in the city of Havre, together with improvements thereon, under the terms of which contract the board of county commissioners has already allowed and paid claims from public funds aggregating $2,283.42. It is alleged in the petition of the relator: "That the statutes of Montana have created the office of County Assessor, have set forth the duties of his office with great particularity, have prescribed the 'mode of his procedure' in placing a value upon all property, have imposed upon his office the duty of listing and placing a value upon city real property and the improvements thereon, for the purposes of assessment and taxation, that this power is vested in the office of county assessor and is exclusive, and may not be assumed by another nor delegated by the assessor,

that the expenditures made by the board of county commissioners of Hill county, Montana, under the said contract with the J. M. Clemenshaw Company as herein set out was without authority of law." Issue being joined by answer and reply, the cause was regularly brought on for trial before the court without a jury, at the conclusion of which the court denied the writ. Judgment was entered accordingly, and the relator has appealed.

Based upon the pleadings and evidence submitted, the court found as facts, and there is no dispute concerning them: That "F. M. Cowan and Leon McNicol as members of the board of county commissioners of the county of Hill, * * * in special meeting, entered into a contract with J. M. Clemenshaw Company, of Cleveland, Ohio, wherein and whereby in consideration of the sum of $2,425 to be paid by said Hill County to said Company, said Company agreed to revalue all of the real property in the city of Havre, Montana, together with all of the buildings and improvements thereupon situated, and to make a personal inspection and examination of each and all of the said lots and parcels of real property, together with each and all of the buildings and improvements thereupon situated, and to obtain particular details as to size, dimensions, age, condition, construction and such other data and information as might enter into the estimate of the cash value thereof, and to report the result of such work, valuations, examinations and inspections to the Board of County Commissioners of said County, using for such purpose a complete card system containing and giving all of such information; that pursuant to such agreement and contract, said J. M. Clemenshaw Company did make a personal inspection and examination of each and all of the lots and tracts of real estate in the said City of Havre, together with all of the buildings and improvements thereupon situated and has supplied to the said Board of County Commissioners of said County, for the use of said County of Hill, complete reports in the form of a card system of said work, such reports containing, among other things, specific and detailed information

relative to the size, dimensions, construction, condition and age of the various tracts of real property of said City of Havre, together with all buildings and improvements thereon, together with an estimate of the said Company of the value thereof; that the data and information so furnished by the said J. M. Clemenshaw Company to the said County of Hill, was and is intended for the use of the County Commissioners of said County while sitting as a County Board of Equalization in the year 1929 and succeeding years, and that the same is reasonably necessary for such purpose; that the major portion of such information and data is not such as the law requires a county assessor of said County to secure and furnish, to the Board of County Commissioners thereof, sitting as a County Board of Equalization or otherwise; * * * that the County of Hill has received the benefits of all work and services rendered pursuant to said contract by said J. M. Clemenshaw Company, and that subsequent to August 28th, 1928, and prior to the time of the trial herein, the Board of County Commissioners of said County of Hill have paid and caused to be paid to the said Company, under the terms of said contract, the total sum of $2,061.25.'' No question is raised as to the propriety of the action, a decision being desired on the merits; and in determining the question involved, nothing herein contained is to be construed as approving this character of procedure.

The only question involved is whether the board of county commissioners, in entering into the contract, acted within the scope of its authority.

The Constitution provides that the legislative assembly "shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property." (Sec. 1, Art. XII.) Pursuant to such authority, the legislature, in outlining the duties of county assessors has provided that "the assessor must prepare an assessment book with appropriate headings, alphabetically arranged, unless otherwise directed by the state board of equalization, in which must be listed all property within the

county, and in which must be specified in separate columns, under the appropriate head: * * * 3. City and town lots, naming the city or town, and the number of the lot and block, according to the system of numbering in such city or town, and improvements thereon. * * * 7. The cash value of city and town lots. 8. The cash value of improvements on city and town lots." (Sec. 2048, Rev. Codes 1921.)

Under the provisions of this enactment, are the duties of the assessor exclusive in the valuation of town property for the purpose of taxation so that the board of county commissioners may not conduct independent investigation of the subject in its aid while sitting as a board of equalization?

Upon further reference to our statutory provisions, it is found that the county board of equalization is given power "to increase or lower any assessment contained in the assessment book, so as to equalize the assessment of the property contained therein, and make the assessment conform to the true value of such property in money" (sec. 2114, Rev. Codes 1921; see, also, Chapter 110, Laws 1927), and the board of county commissioners is constituted the county board of equalization (Id., 2113). The board of county commissioners is clothed with power: "1. To supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county, charged with assessing, collecting, safe keeping, management, or disbursement of the public revenues; see that they faithfully perform their duties; direct prosecutions for delinquencies; and, when necessary, require them to renew their official bonds, to make reports, and to present their books and accounts for inspection, * * * 25. To perform all other acts and things required by law not in this title enumerated, or which may be necessary to the full discharge of the duties of the chief executive authority of the county government." (Id., 4465.) And when acting as a board of equalization, it is vested with power and authority to "subpoena such witnesses, hear and take such evidence in relation to the subject pending, as in its discretion it may deem proper" (Id., 2117), and "the board of county commissioners must

use the abstract and all other information it may gain from the records of the county clerk *or elsewhere*, in equalizing the assessment of the property of the county." (Id., 2119.)

The fundamental rule is recognized that counties are ██ subdivisions of the state of purely statutory creation, and when they assume to exercise a power, authority therefor must be found in the statute conferring power upon them, or necessarily implied in order to carry out an express power. And whenever a power is conferred upon the board of county commissioners, but the mode in which the authority is to be exercised is not indicated, the board in its discretion may select any appropriate mode or course of procedure. (*Fisher* v. *Stillwater County*, 81 Mont. 31, 261 Pac. 607; *Arnold* v. *Custer County*, 83 Mont. 130, 269 Pac. 396.) Here we find the duty imposed upon the assessor to make the assessment of property in the first instance, and subsequently the board of county commissioners is required to increase or lower any assessment contained in the assessment-book prepared by the assessor, so as to equalize the assessment of property listed in such book. The board cannot intelligently perform this duty imposed upon it without reliable independent information as to the value of the property. To constitute the board of county commissioners *ex officio* a county board of equalization, require it as such to adjust and equalize assessments as made by the assessor, and then deny it implied power to contract with specialists so as to enable it to obtain necessary data of character to enable it to act intelligently, would be equivalent to a complete nullification of the power expressly conferred. The board of equalization in the matter of the assessment of property is constituted a reviewing body which must pass upon the work done by the assessor, and it would be strange indeed if the board in the performance of its duty was deprived of recourse to independent sources of information. If the powers of the board were so limited, then, when the assessor was content with the valuation by him made, there would be nothing before the board upon which to base an increase, although with propriety it should be made. It would

be *functus officio,* in performance of this very important duty imposed upon it by law. Valuations as made by the assessor, however unscientific or arbitrary, would be final. But, on the other hand, if the powers of the board are not so restricted, it may legally enter into bona fide contracts for such service as is provided for in the contract under consideration. (*Maurer* v. *Weatherby,* 1 Cal. App. 243, 81 Pac. 1083.) And necessarily the board of county commissioners must be held to be vested with implied power to enable it intelligently to apply its judgment and discretion when sitting as a board of equalization in performance of the duty imposed upon it by the statute to adjust and equalize the assessment of property within the county as made by the assessor in the performance of his independent duty; and the courts should not interfere, unless it is apparent that the service contracted has no relation to the proper performance of its duty. (*Skidmore* v. *West,* 186 Cal. 212, 199 Pac. 497.) The legislature, in conformity with the requirements of the Constitution, has prescribed regulations calculated to bring about a just valuation of all the property for the purpose of taxation, and every aid and encouragement should be afforded the officers designated in the intelligent performance of this important function. Thus the authority conferred finds root in the Constitution itself. Of course, the board cannot be permitted to enter into such a contract as would deprive the assessor of the duty independently imposed upon him, or to relieve him of his official obligation, and nothing said herein is to be so construed.

The recent decision by this court in the case of *Arnold* v. *Custer County,* supra, presents a situation somewhat similar to the case now before us, and the conclusion therein reached is in accordance with our present views as to the implied authority of a board of county commissioners here applicable. We are of opinion that the board of county commissioners was possessed of authority to enter into the contract in question, and therefore that no duty rested upon the respondent county attorney to institute action to recover back money paid out

under the contract or to enjoin further expenditures thereunder.

The court was not in error in denying the writ, and the judgment is affirmed.

Mr. Chief Justice Callaway and Mr. Justice Matthews concur.

Mr. Justice Angstman, being disqualified, takes no part in the foregoing decision.

MR. JUSTICE FORD: I dissent. In my opinion the board of county commissioners was without authority, either express or implied, to enter into the contract in question.

I agree with the rule announced in the majority opinion that wherever a power is expressly granted to the board, but the mode in which the authority is to be exercised is not prescribed, the board may select any appropriate course of procedure; but in my opinion the rule is without application here. Our statutes define the powers and duties of the board sitting as a board of equalization, and likewise prescribe, definitely and in much detail, the method or mode of exercising the powers expressly conferred. It has authority, after notice, to increase or lower any assessment, so as to equalize the same to conform to the true value in money. (Sec. 2114, Rev. Codes 1921.) No reduction may be made in the valuation unless the party affected makes and files with the board a verified written application therefor, showing the facts upon which it is claimed such reduction should be made (sec. 2115, Id.), and before granting any reduction the board must examine, on oath, the applicant touching the value of the property, and no reduction may be made unless such person or his agent attends and answers all questions pertaining to the inquiry (sec. 2116, Id.). Upon the hearing, the board may subpoena witnesses and hear such evidence as in its judgment it may deem proper. (Sec. 2117, Id.) The assessor or any deputy whose testimony is needed must be present and may make any statement, or introduce and examine witnesses, on the question

before the board. (Sec. 2118, Id.) Generally, in the discharge of the important duties of equalizing the assessments made by the county assessor, the board "must use the abstract and all other information it may gain from the records of the county clerk or elsewhere." (Sec. 2119, Id.) Thus it seems clear that the power to equalize the assessment of the property is granted the board and the method and mode of performing the service are expressly prescribed.

"Where authority is given to do a particular thing and the mode of doing it is prescribed, it is limited to be done in that mode; all other modes are excluded." (2 Lewis' Sutherland on Statutory Construction, 919.) This is a part of the so-called doctrine of *"Expressio unius est exclusio alterius."*

The majority opinion emphasizes the words "or elsewhere," used in section 2119, supra, and it seems to me the conclusion is largely based upon these words as furnishing implied power to the board. I think it is going entirely too far to say that by the use of those words the legislature intended to grant the power to the board to employ "experts," at county expense, to prepare records from which the board may gain information for the purpose of equalizing assessments.

It is important to note that no one is bound by the reports or information furnished under the contract; they may be used in equalizing assessments, or may be disregarded entirely. If the reason for entering into the contract was that the board is not sufficiently versed in the value, construction and character of the property in Havre, to act intelligently in equalizing the assessments, then when they sit as members of the board of equalization, it follows that they could not measure the information furnished with any degree of accuracy or understanding. They could not tell whether the values placed upon the property be true values, or whether arbitrary, or resting upon ill-founded opinions. The legal effect of the contract must be determined by resort to the reasons prompting its execution. When so considered, it is obvious that if the county is to receive any value for the expenditure, the "experts" employed by the Clemenshaw

Company in reality become the assessing officers of the county, though not bound by oath as are other officials, nor held to a fair and impartial performance of duty by a bond such as is required from the assessor and members of the board of county commissioners.

It is not suggested that the reports made would constitute competent evidence in any statutory proceeding or judicial hearing. That being so, the board of equalization could not properly weigh them against a proper showing made by a taxpayer in his effort to reduce or prevent the increase of a proposed valuation of his property. It would seem that these reports could be legitimately used only for the purpose of suggesting the possible need of investigation; that is, if they materially differ from the valuations fixed by the assessor, the discrepancies might justify the board in making an investigation for the purpose of ascertaining the facts in the manner prescribed by statute.

As I view the record, the real question presented is whether the board of equalization has the power to employ ''experts'' to perform the duties imposed upon it and the county assessor by express statutes, and I am constrained to answer in the negative.

If the board had the power to enter into the contract, then by the same token it could, if it conceived the notion, employ ''experts'' to value stocks of merchandise, others to value cattle, others to value sheep, and still others to value each class of property, real and personal, within the county.

It is true, as stated in the majority opinion, that the board of equalization acts as a reviewing body to pass upon the work of the assessor (a highly important function), but the construction I place upon the statutes under consideration would not deprive that body of making an independent investigation and obtaining the information necessary to equalize the assessments made by the assessor.

I concede that our assessment and taxation laws are in many respects crude. They were enacted when the problems which now beset us had not become acute, but they are the rules for

our guidance, and the county commissioners as well as this court, are bound by the law as it is. It may be that the method adopted in the instant case is more convenient and efficient and will tend to eliminate some of the objectionable features of our system, but until the legislature has conferred upon the board the power to expend county money for that purpose, I think it must be held that it is beyond their power to so expend the county's funds.

The cases of *Northwestern Improvement Co.* v. *McNeil,* 100 Wash. 22, 170 Pac. 338, and *Dexter Horton Trust & Sav. Bank* v. *Clearwater County,* (D. C.) 235 Fed. 743, affirmed in 248 Fed. 401, 160 C. C. A. 411, support the views I have expressed.