HARRY W. SPEER ET AL., APPELLEES, V. ED U. KRATZENSTEIN ET AL., APPELLANTS.

9 N. W. (2d) 306

FILED APRIL 23, 1943. No. 31564.

*S. S. Diedrichs* and *Beatty, Maupin & Murphy,* for appellants.

*Shuman & Overcash* and *Beeler, Crosby & Baskins,* contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This is an action by Harry W. Speer and D. E. Martin as taxpayers of Lincoln county, Nebraska, plaintiffs and appellees, against Ed U. Kratzenstein, a county commissioner of Lincoln county, Nebraska, and St. Paul Mercury Indemnity Company of St. Paul, a corporation, his bondsman, New Amsterdam Casualty Company, a corporation, bondsman for Virgil Thayer, a county commissioner who had resigned his office before commencement of this action, Roy Hungerford, a county commissioner, and the American Bonding Company of Baltimore, a corporation, his bondsman, and the County of Lincoln, defendants and appellants. By the action no recovery is sought against the county of Lincoln. It was joined as a defendant because of its failure to bring the action. The action is by taxpayers for the benefit of the county.

The action is to recover from the county commissioners and their bondsmen, on behalf of the county, $1,025 alleged

to have been paid out of the funds of Lincoln county, Nebraska, to one C. A. Emery upon an alleged illegal and unauthorized contract and agreement entered into between the county commissioners and the said C. A. Emery for the appraisal of the real estate in the incorporated cities, towns and villages in Lincoln county, Nebraska. The judgment was in favor of the plaintiffs and the defendants have appealed.

The controlling facts are not in dispute. In September, 1937, a contract was entered into between C. A. Emery and the county commissioners of Lincoln county, Nebraska, on behalf of the county whereby Emery was engaged or employed to make an appraisal of all of the real estate in the incorporated cities, towns and villages in the county within a given period for $3,000. The work was performed in accordance with the terms of the agreement and the compilation of the appraisal was delivered to the county clerk who was also the county assessor. On January 3, 1938, which was before the completion of the work but in accordance with the requirements thereof, Emery filed his claim for $1,000 against the county for partial payment. The claim was allowed, a warrant drawn and subsequently paid with an additional $25 on June 23, 1938. The additional $25 appears to have been interest on the warrant. It is this $1,025 which is the basis of this action.

The plaintiffs contend in their petition, and the district court found, that the contract and agreement was void for the reason that it was beyond the power of the county board to enter into such contract or to bind the county for the purposes contemplated therein, and that in consequence the county commissioners and their bonds are chargeable as for misapplication of funds for the amounts of money paid out thereunder.

The assigned grounds for reversal are numerous but analyzed there are but three important ones. They are, the court erred in holding (1) that the agreement contemplated an abandonment of an assessment by the regularly constituted authorities and a substitution therefor of the

appraisal by Emery, (2) that the contract was one beyond the power of the county board to enter into on behalf of the county, and (3) that Emery failed to establish the value of his service.

As to the first, it becomes necessary to conclude that the district court was in error since the record is devoid of anything except the most vague inference that this appraisal was to take the place of a regular assessment, while on the other hand all witnesses having a knowledge of the facts testified to the contrary. The undisputed evidence is that the sole and only purpose for which the county commissioners intended the appraisal made by Emery would or should be used was as a basis for ascertainment and fixing of values in the incorporated cities, towns and villages by the board of equalization.

On the third one of these propositions all parties agree that the contract was entered into and Emery testified to the value of the service. This testimony was in no wise rebutted, therefore, the value of the service must be considered as having been established.

The purpose of the appraisal having been limited, the consideration by this court is limited to the question of whether or not the county board had the express or implied power to enter into a contract for this purpose and to charge the county therefor in anticipation of difficulties which might confront the county board of equalization.

That there is no express power in the statutes to enter into such undertakings as this is not questioned by the parties. If the power may be found to be implied this must be done agreeable to the rule that county commissioners are clothed with the powers expressly conferred upon them by statute and also such powers as are requisite to enable them to discharge the official duties devolved upon them by law. *Emberson v. Adams County*, 93 Neb. 823, 142 N. W. 294; *Cheney v. County Board of Supervisors*, 123 Neb. 624, 243 N. W. 881.

Among the express powers of the county board is found none which confers any right to make, supervise or in any

wise control the valuation of the real estate or other property in the county for assessment purposes. It follows that there being none expressed, there can be no implied power in this particular connection, since there can only be implied power where there is a necessity to make effective that which is expressed.

It is the contention of the defendants that this contract came within the implied powers of the county board on the theory that the board, having membership on the county board of equalization, which board is charged with equalization of real and personal property assessments in the county, had implied power to provide data and information which would facilitate the board of equalization in the performance of its functions.

The county board of equalization and the county board are not one and the same entity. The board of equalization is composed of the county board, the county assessor and county clerk. Comp. St. 1929, sec. 77-1701.

The board of equalization has various functions all of which deal with and are limited to assessment and review of assessment and the securing of information pertinent to assessment and review. Comp. St. 1929, secs. 77-1702, 77-1703, 77-1704. Among the functions as defined in section 77-1702 are the following: To equalize the valuation of personal property; to equalize the valuation of real property at regular intervals; in cases of evident error or gross injustice as to value of real estate to correct such errors in other than regular real estate assessment years; in case of transfer of real estate to apportion values of property divided by transfer; to ascertain whether the valuation of one township, precinct or district bears a just relationship to other townships, precincts or districts and to make proper equalization; to adjust assessments for the county by raising or lowering the assessment of any person to secure a listing of the property at its actual value; and to add to the assessment rolls any taxable property not included.

For the purpose of the performance of its designated functions the board of equalization may require the attend-

ance of any taxpayer whose listing is brought into question. Comp. St. 1929, sec. 77-1703. Also the board may compel the attendance of witnesses. Comp. St. 1929, sec. 77-1704.

From these powers and functions of the board of equalization the implied power of the county board to enter into such contracts as this one and to charge the county therefor must flow, if the contention of the defendants is to be sustained.

This matter has not been previously passed upon by this court. It has, however, been dealt with in a number of other jurisdictions. The decisions are not uniform. Some of them support the contention of the plaintiffs and others that of the defendants.

In *State v. Kuhr,* 86 Mont. 377, 283 Pac. 758, the court considered a case in nearly every respect like the one we are considering here. The statute defining the powers and duties of the county board is almost identical with ours and a contract similar to the one being considered here was under consideration. The only substantial difference was that in that state the county board was *ex officio* the board of equalization, whereas in Nebraska, the board of equalization is a separate entity. In upholding the right of the board to make the contract and of recovery thereon, the court held that by statute the board of county commissioners was required to use the abstract of assessment and all other information it might gain from the records of the county clerk or elsewhere, in equalizing the assessment of the property of the county, and in consequence it had implied power to contract for appraisals to aid in the equalization.

In *Simpson v. Silver Bow County,* 87 Mont. 83, 285 Pac. 195, on the power of the county board to contract for assistance to the board of equalization, the court said: "The power to 'examine' the assessment-books and review the work of the assessor includes, and grants, the power to oversee the assessment of all property which should be upon the assessment-books and to determine whether the rolls

include all of the assessable property of the county."

Announcing a similar rule is *Maurer v. Weatherby,* 1 Cal. App. 243, 81 Pac. 1083. In a statement too lengthy to be quoted here, the court concluded that the power so to contract must be implied since to impose a duty upon the board to equalize valuations and to limit the inquiry to the information obtainable from the functionary making the assessment would defeat the purpose of equalization. To the same effect is *Haley & Co. v. McVay,* 70 Cal. App. 438, 233 Pac. 409.

In *Roper v. Hall,* 280 S. W. (Tex. Civ. App.) 289, which is similar to the one being considered here the court said: "The general powers so given to the commissioners' courts are of little practical value without the further authority to use adequate means to insure the proper, intelligent and effective exercise thereof."

Other decisions tending to support the position of the defendants herein are, *Skidmore v. West,* 186 Cal. 212, 199 Pac. 497; *Skidmore v. Dambacher,* 6 Cal. App. (2d) 83, 43 Pac. (2d) 1110; *Wingate v. Clatsop County,* 71 Or. 94, 142 Pac. 561; *Haynes v. Police Jury of Ouachita Parish,* 139 La. 101, 71 So. 244; *Von Rosenberg v. Lovett,* 173 S. W. (Tex. Civ. App.) 508; *Pacific Timber Cruising Co. v. Clarke County,* 233 Fed. 540.

In none of the cases referred to was the point presented or discussed that the equalizing entity was a different entity from that which entered into the contract on behalf of the county as is true in this state.

On the other side of the proposition and in consideration generally of the question of the implied power of a county to enter into contracts for valuation of property for the use of boards of equalization, as well as such implied power where the county board and the board of equalization are separate entities, we direct our attention first to the case of *Northwestern Improvement Co. v. McNeil,* 100 Wash. 22, 170 Pac. 338, which deals with a situation where the county board and the board of equalization are separate entities. In dealing with the power of the county board to con-

tract for information to be used by the board of equalization the court said: "It is urged that, because the board of county commissioners sit as members of the board of equalization, it has power to seek such information as would be obtained under the contract in order to fairly judge the value of property. The answer to this is that the board of county commissioners, as such, is not an assessment body. It is not a board of equalization. It is in no way connected with, nor is it in theory interested in, the assessment of property; that is a business put by law upon another and wholly independent board. It is true that the members of the board of county commissioners sit with other officers—the county assessor and the county treasurer—and with them make up a board of equalization * * * ; but it is an independent body having duties and privileges specifically defined by law."

The court, in commenting upon the practical effect of the conclusion arrived at in the same opinion, stated: "We may grant that, in a given case, the assessor is incompetent to fix values, and that the commissioners, when called upon to sit with the board of equalization, cannot intelligently perform their duties, but this furnishes no legal reason for contracting away a duty which the law has imposed upon the presumption of their fitness. Such a situation may call for legislative action, or the election of others having necessary qualifications; but the courts are powerless to afford a remedy without trenching the province of the legislative body. Neither necessity nor convenience give ground for the sanctioning of such a contract."

In that case as here it was not contemplated that the appraisement was to be binding on anybody. The court in that connection observed: "For, if the assessor or the board of equalization are not to be bound, there can be no legal excuse for making the contract, for the commissioners and assessors ground their defense upon a plea of inability to fix values. Being so unable, it follows that they could not measure the report when made with any degree of accuracy or understanding. They could not tell whether

it be a true valuation, or whether it be arbitrary, or one resting in ill-founded opinion."

In *Stevens v. Henry County*, 218 Ill. 468, 75 N. E. 1024, in dealing with the power of the county to contract with regard to information to be supplied to the board of equalization the court said: "If it should be conceded that the statute does not require the board of review to hunt for and endeavor to discover secreted, omitted property for taxation, we would still adhere to our position that the county, in the absence of a grant of power to do so, would have no authority to make the contract in question. Such situation might well be deplored and the necessity be apparent for a law charging some person or persons specifically with the duty or authorizing the county board or some competent authority to employ persons capable of such work; but if such should be the case it would be a suitable matter to call to the attention of the legislative department, and cannot be reached by the unauthorized action of county boards or other local governmental bodies who have no such powers granted them."

In *State v. Stone*, 236 Ala. 82, 181 So. 281, speaking of power in such circumstances the court said: "The matter of adjustment of tax valuation rested with the Board of Review. Neither the county nor its Board of Review were delegated any duty or authority in relation thereto. Incidentally, of course, the county had an interest. But there was no duty imposed concerning this adjustment." It further said: "There being no duty imposed or authority conferred in relation to the work before the Board of Review, no implied power can follow, and the trial court correctly so ruled."

In *Dexter Horton Trust & Savings Bank v. Clearwater County*, 235 Fed. 743, the court dealing with an Idaho contract concluded that an unofficial appraisement such as was contemplated by the contract in the case at bar was invalid for the reason, among others, that it was without value since it was not an assessment and could not be used as a basis for assessment. The court said: "It would seem,

therefore, that the reports could be legitimately used only for the purpose of suggesting the possible need of investigation; that is, if they differ materially from the valuations which the assessor has been or is placing upon certain lands, the discrepancy may justify the board of equalization in making an investigation for the purpose of ascertaining the facts."

The plaintiffs contend further that the situation is controlled by the general proposition that a county board is without authority in the absence of grant to perform the duties which are a part of the official duties of other officials or boards. The authorities generally sustain this contention. *People v. Harding,* 333 Ill. 384, 164 N. E. 827; *State v. Field,* 24 N. M. 168, 172 Pac. 1136; *Fancher v. Board of Commissioners,* 28 N. M. 179, 210 Pac. 237; *State v. Board of County Commissioners,* 77 Kan. 540, 95 Pac. 392; *State v. Board of County Commissioners,* 150 Kan. 143, 91 Pac. (2d) 2; *Decatur County v. Roberts,* 159 Ga. 528, 126 S. E. 460; *Chase v. Board of County Commissioners,* 37 Colo. 268, 86 Pac. 1011.

In the light of our statutes, the decisions from other jurisdictions and what we consider sound reasoning and a due and proper regard for division of the powers of government, we are inclined to, and do adopt, the view that the county board was without power to enter into the contract in question and that such contract is void.

The service contemplated by the contract may well have been of value to Lincoln county and it may have been well worth while and well worth its costs in the interest of expediency in assessment and equalization of values of real estate, but we may not determine the question on the basis of expediency or value of the appraisement for the purpose or purposes for which it was intended but solely on the basis of existence or nonexistence of power, express or implied.

The legislature has set up the methods for assessment and equalization of values of real and personal property for the purposes of taxation and those methods are exclusive.

They may be found to be inefficient and unsatisfactory and, moreover, we might conclude that other methods or measures could be adopted which would effectuate a higher degree of justice and equality, yet the judicial department of government is without power to impose such methods or measures. That is a matter that pertains to the legislative department.

This being an unlawful and void contract it is wholly void as an obligation against Lincoln county. Section 26-732, Comp. St. 1929, which is controlling in the present case, is in part as follows: "All contracts, either express or implied, entered into with any county board, for or on behalf of any county, * * * in the absence of a statute expressly authorizing such contract to be entered into, * * * shall be wholly void as an obligation against any such county."

In the case of audit, allowance, payment, or authorization of payment by an official or officials under a void contract the purpose or effect of which is to charge the county, by statute, action may be maintained by a taxpayer for recovery on behalf of the county against any such official or officials, and the surety or sureties on the official bond or bonds of such official or officials. Declaring this right is section 26-733, Comp. St. 1929, as follows: "Any public official, or officials who shall audit, allow, or pay out, or cause to be paid out, any funds of any county for any article, public improvement, material, service, or labor, contrary to the provisions of the next preceding section, shall be liable for the full amount so expended, and the same may be recovered from any such official or the surety upon his official bond by any such county, or any taxpayer thereof." See, also, *Holt County v. Tomlinson*, 98 Neb. 777, 154 N. W. 537.

For the reasons herein stated, the judgment of the district court is affirmed.

AFFIRMED.

The following opinion on motion for rehearing was filed December 21, 1943.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CHAPPELL, J.

Upon rehearing and further examination of many authorities from our own and other jurisdictions we have decided that our former opinion, *ante*, p. 300, 9 N. W. (2d) 306, should be modified in certain particulars.

The facts will not be repeated here except to say that on September 7, 1937, the county commissioners of Lincoln county, Nebraska, hereafter called the county board, by appropriate resolution entered into a contract whereby for a definite consideration they employed an expert, with 12 years' experience in the valuation of real property for tax purposes, to make an appraisal and comparative valuation of all the real property and improvements in the incorporated towns in the county. The appraisal was to be used as a basis of information and knowledge for ascertaining and fixing the values thereof by the county board of equalization in the performance of its constitutional and statutory duties in equalizing real estate values for taxation purposes. The defendants allege in their answer, and there is evidence in support thereof, that there existed many unjust

and relative inequalities in the valuation of such property for assessment purposes, particularly between those properties situated in the incorporated towns and outside thereof, and as between properties in the respective townships, precincts and districts of the county.

The work was performed by the expert in conformity with the contract, and he delivered a detailed valuation or appraisal of each and all of such properties and improvements, together with maps, plats, audits, and records containing full information in connection therewith to the county clerk. The county board allowed his claim for partial payment and caused a warrant to be issued therefor, which was paid by the county treasurer. Thereafter this action was brought by plaintiffs as taxpayers against the members of the county board and their bondsmen respectively to recover such payment for the benefit of the county and its taxpayers, relying upon sections 26-732 and 26-733, Comp. St. 1929.

The trial court entered a judgment for plaintiffs as prayed, finding, in substance: 1. That the contract was made in good faith and without collusion or fraud, but that it was void because the county board had no express or implied power to make such a contract for the county. 2. Also, that it was void because it was intended to usurp the statutory duties and functions of the assessment officers of the county. 3. And, that there was no evidence establishing the value of the services rendered by the expert.

Upon appropriate assignments of error, we decided in our former opinion that the trial court erred in the two latter conclusions, and in this opinion we reaffirm that part of the decision. However, we affirmed the judgment of the trial court by deciding that the county board was without power to enter into the contract in question, and that the contract was void for that reason. From that part of the decision we recede in this opinion.

Referring to sections 26-732 and 26-733, Comp. St. 1929, we find that the contract was not made in contravention of any statutory limitation of power and the evidence is that

there were funds legally available for payment of the claim. Therefore, it is axiomatic, since the contract was made in good faith and without collusion, fraud, or other illegality, and performed in conformity therewith, that if the county board had the power to enter into the contract, the county would be compelled to pay according to its terms, and neither the members of the county board nor the sureties on their official bonds would be liable under the statutes relied upon by plaintiffs. We decide that the county board had the power to enter into the contract.

A county is one of the public governmental subdivisions of a state, corporate in character (Comp. St. 1929, sec. 26-101), created and organized for public political purposes connected with the administration of state government and specifically charged by law with the superintendence and administration of local affairs within its lawfully defined territorial boundaries. See *County Commissioners of Howard County v. Matthews,* 146 Md. 553, 127 Atl. 118; *Franek v. Butler County,* 127 Neb. 852, 257 N. W. 235; *Ahern v. Richardson County,* 127 Neb. 659, 256 N. W. 515; *Lindburg v. Bennett,* 117 Neb. 66, 219 N. W. 851; 20 C. J. S. 753, sec. 1. Unless restrained by the Constitution the legislature may exercise control over county agencies and require such public duties and functions to be performed by them as fall within the general scope and objects of the county as a body corporate or politic. See *Dawson County v. Phelps County,* 94 Neb. 112, 142 N. W. 697; *City of Fremont v. Dodge County,* 130 Neb. 856, 266 N. W. 771; 20 C. J. S. 806, sec. 52 and 851, sec. 82.

Both the county board and the board of equalization are such county agencies, required by statute and applicable authorities to perform certain well-defined public duties and functions in perfecting the administration of representative local government. They are separate entities, as is every other agency of the county, but this is immaterial under our statutes and authorities as will hereafter appear. There are cases holding otherwise but they are either distinguishable as to issues, facts, or particular statutes in-

volved, or state a rule, which, after mature reflection, we deem unwise to apply in the case at bar, in view of the relative statutory duties imposed and original and exclusive powers conferred upon our county boards.

The board of equalization is an administrative agency of the county, created by section 77-1701, Comp. St. 1929. It is composed of the county board, county assessor, and county clerk who acts as clerk of the board. Section 77-1702, Comp. St. 1929, provides its duties and functions, in substance, towit: It shall hold a session of not less than three and not more than twenty days commencing on the first Tuesday after the second Monday of June each year for the purposes: First, to fairly and impartially equalize the valuation of the personal property of the county. Second, at its meeting in 1912 and every second year thereafter, equalize the valuation of real property of the county by raising the valuation of such tracts and lots as are assessed too low, and lowering the valuation if assessed too high, but in cases of evident error of assessment or of apparent gross injustice in overvaluation or undervaluation of real property the board of equalization may at its annual meetings consider and correct the same by raising, after due notice, or by lowering the assessed valuation (without notice). Third, ascertain whether the valuation of one township, precinct, or district bears just relation to all others in the county, and may increase or diminish the aggregate valuation of property in any township, precinct, or district by adding or deducting such sum upon the hundred as may be necessary to produce a just relation between all the valuations of the property in the county. It may consider lands, village or city lots, and personal property and different classes of personal property except property assessed or valued by the state board of equalization and assessment separately, and determine a separate rate per cent. of addition or reduction for each of the classes of property as may be necessary to adjust the equalization thereof. Fourth, adjust assessments for the county by raising or lowering the assessment of any person as to any or all items of his assess-

ment in such manner as to secure the listing of property at its actual value and the assessment of property at its taxable value, but in no case shall the assessment of any person be raised without notice if such person or his agent can be found in the county. Fifth, also, add to the assessment rolls any taxable property not included therein, assessing the same in the name of the owners thereof as the assessor should have done, but no personal property shall be so added unless the owner is previously notified if he be found in the county.

Section 1, art. VIII of the Constitution provides, in part: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct; but taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises * * * ."

It will be observed that the board of equalization is an administrative board of review to pass upon the records, valuations, and conclusions of the assessor for the purpose of correcting errors and inequalities in valuations as fixed by the assessor, and the values placed thereon by such assessor are not conclusive and final. See *Hacker v. Howe*, 72 Neb. 385, 101 N. W. 255. Under our statutes the board of equalization acts in a dual capacity in that it has power to equalize assessments between the various taxing districts, and also to review and correct individual assessments. See *State v. Edwards*, 31 Neb. 369, 47 N. W. 1048; 61 C. J. 742. Sections 77-1703 and 77-1704, Comp. St. 1929, have reference to the latter power and are not either exclusive or conclusive here.

"A county can contract only through the persons expressly provided by the statute." 20 C. J. S. 1008, sec. 175. We have held that a county board of equalization is simply what its name imports, a board for the equalization of valuations in certain cases. It possesses no powers save those conferred by statute. See *Brown v. Douglas County*, 98 Neb. 299, 152 N. W. 545. A county board of equalization as such, therefore, has no authority to enter into any

contract to obtain the information, knowledge or evidence necessary to equalize valuations.

The statutes legally impose a duty upon the board of equalization to equalize valuations and we cannot deny to such board recourse to independent sources of expert, reliable information and knowledge, such as appraisals, maps, plats, audits and records which will enable it to act fairly, intelligently and legally in performing that duty. We find that the only authority to contract for such services is specifically placed in the county board. To hold otherwise would, in effect, prevent the county from obtaining the facts necessary to a sound and efficient administration of a fundamental object of county government involving the constitutional rights of its citizens.

In this connection, other courts have made similar observations. In *State v. Kuhr*, 86 Mont. 377, 283 Pac. 758, a case very similar to the one at bar, it was stated by the court: "The board of equalization in the matter of the assessment of property is constituted a reviewing body which must pass upon the work done by the assessor, and it would be strange indeed if the board in the performance of its duty was deprived of recourse to independent sources of information. If the powers of the board were so limited, then, when the assessor was content with the valuation by him made, there would be nothing before the board upon which to base an increase (or decrease), although with propriety it should be made. It would be *functus officio* in performance of this very important duty imposed upon it by law. Valuations as made by the assessor, however unscientific or arbitrary, would be final. But, on the other hand, if the powers of the board are not so restricted, it may legally enter into *bona fide* contracts for such service as is provided for in the contract under consideration. (*Maurer v. Weatherby*, 1 Cal. App. 243, 81 Pac. 1083.)" See, also, *H. D. Haley & Co. v. McVay*, 70 Cal. App. 438, 233 Pac. 409; *Roper v. Hall*, 280 S. W. (Tex. Civ. App.) 289.

The legislature has expressly conferred certain original, exclusive powers on a county board. Section 26-103, Comp.

St. 1929, provides, in part: "The powers of the county, as a body corporate or politic, shall be exercised by a county board, * * * ." Section 26-104, Comp. St. 1929, "Each county shall have power * * * To make all contracts and to do all other acts in relation to the property and *concerns* (defined as, "that which relates or belongs to one; business; affair." Webster's New International Dictionary (2d ed.). See, also, Century Dictionary and Cyclopedia) of the county *necessary* (defined in *Lancaster County v. Green,* 54 Neb. 98, 74 N. W. 430, and applicable in the case at bar) to the exercise of its corporate powers." Section 26-105, Comp. St. Supp. 1937, " * * * To manage the county funds and county business except as otherwise specifically provided. * * * As a board, or as individuals, to perform such other duties as may from time to time be imposed by general law." Chapter 26, art. 21, Comp. St. Supp. 1937, provides for a county budget and the adoption thereof by the county board, to be raised by taxation, in no instance to exceed the amount of taxes authorized by law to be levied during that year, with power at the time of making the tax levy to reduce any and all of the amounts provided in the budget if necessary to bring the same within the constitutional and statutory limitations as applied to the county tax assessment rolls as returned to such board by the state tax commissioner. Section 26-108, Comp. St. Supp. 1937, "It shall be the duty of the county board of each county: First. To cause to be annually levied and collected taxes authorized by law for county purposes," not exceeding certain limitations on the one hundred dollars actual valuation. See, also, section 77-1801, Comp. St. Supp. 1937.

Concededly, a county board is without power to contract with a person to perform acts which are a part of the official duties imposed by statute on the board itself or another county officer or on an officer of the state. 20 C. J. S. 1014, sec. 180. But, we do not have that question for decision here since we affirmatively find that the appraisal was not to take the place of a regular assessment which the statute requires the assessor to make. An applicable rule in the

case at bar is that, unless prohibited by statute, a county board may adopt such means as in its judgment shall be necessary in assisting county officers properly to discharge the duties of their offices. 20 C. J. S. 854, sec. 85; 15. C. J. 459. We find no such prohibition in our statutes.

In addition, it is well settled that a county board possesses and can exercise not only such powers as are expressly conferred upon it by the constitution and statutes of the state, but it also possesses and can exercise such powers as arise by necessary implication, or such as are incidentally necessary to carry into effect those expressly granted, or such as are requisite to the performance of the duties which are imposed upon it by law. A county board must necessarily possess an authority commensurate with its public trust and duties. 20 C. J. S. 849, sec. 82; 15 C. J. 457; *Cheney v. County Board of Supervisors*, 123 Neb. 624, 243 N. W. 881.

The statutes of this state, with certain specific exceptions therein provided, confer upon a county board plenary jurisdiction of, and authority to make, all contracts for the county, on any subject within the scope of the powers of such county acting as a body corporate or politic. It is the representative and guardian of the county, and charged with the protection of the county's rights and interests and the promotion of its welfare. The acts and contracts of a county board within the scope of its authority are the acts and contracts of, and binding upon, the county, and courts will not interfere therewith in the absence of illegality, mistake, fraud, or unreasonable discretion. 20 C. J. S. 848, sec. 81; *Lindburg v. Bennett, supra; Lancaster County v. Lincoln Auditorium Ass'n*, 87 Neb. 87, 127 N. W. 226; *Roberts v. Thompson*, 82 Neb. 458, 118 N. W. 106.

Previous decisions of this court have been in conformity with these views, and in this respect the theory of separate entities has not been material in controlling our judgment since the power to bind the county by contracts within the scope heretofore stated rests with the county board whether or not it involves another office, agency or entity. *Lan-*

*caster County v. Green, supra; Christner v. Hayes County,* 79 Neb. 157, 112 N. W. 347 (citing and· distinguishing *Card v. Dawes County,* 71 Neb. 788, 99 N. W. 662) ; *Berryman v. Schalander,* 85 Neb. 281, 122 N. W. 990; *Emberson v. Adams County,* 93 Neb. 823, 142 N. W. 294; *Dunn v. Dixon County,* 102 Neb. 1, 165 N. W. 959; *Buffalo County v. Bowker,* 111 Neb. 762, 197 N. W. 620; *Campbell v. Douglas County,* 142 Neb. 773, 7 N. W. (2d) 764. For citation and discussion of cases from other jurisdictions see *Arnold v. Custer County,* 83 Mont. 130, 269 Pac. 396.

Since we conclude that the contract in suit was valid and enforceable, the judgment of the trial court is reversed and the cause remanded with directions to enter a judgment for defendants; and our former opinion, *ante,* p. 300, 9 N. W. (2d) 306, is set aside in so far as it conflicts herewith.

REVERSED, WITH DIRECTIONS.

YEAGER, J., dissenting.

On rehearing the majority of the court has seen fit to recede from the former opinion appearing, *ante,* p. 300, 9 N. W. (2d) 306. I cannot concur in the new opinion, hence this dissent. For the purposes of this dissent the former opinion is adopted herein by reference. I feel strongly that the former opinion is correct in statement and conclusion and I shall seek to avoid repetition of either substance or literal statement therefrom so far as possible. My purpose here shall, in the main, be an effort to point out what I consider some of the fallacies of the majority opinion on rehearing:

In the sixth paragraph of the opinion is found the following: "Referring to sections 26-732 and 26-733, Comp. St. 1929, we find that the contract was not made in contravention of any statutory limitation of power and the evidence is that there were funds legally available for the payment of the claim. Therefore, it is axiomatic, since the contract was made in good faith and without collusion, fraud, or other illegality, and performed in conformity therewith, that if the county board had the power to enter into the contract, the county would be compelled to pay according to

its terms, and neither the members of the county board nor the sureties on their officials bonds would be liable under the statutes relied upon by plaintiffs. We decide that the county board had the power to enter into the contract." In this connection I quote section 26-732, Comp. St. 1929, in its entirety: "All contracts, either express or implied, entered into with any county board, for or on behalf of any county, and all orders given by any such board or any of the members thereof, for any article, service, public improvement, material or labor in contravention of any statutory limitation, or when there are, or were no funds, legally available therefor, or in the absence of a statute expressly authorizing such contract to be entered into, or such order to be given, are hereby declared unlawful and shall be wholly void as an obligation against any such county."

It will readily be observed from a reading of this section that failure to find "contravention of any statutory limitation" does not furnish a county board with power to contract. In the specific terms of this section power to contract by a county board does not exist "in the absence of a statute expressly authorizing such contract to be entered into." The opinion nowhere points out statutory authority for such engagements as this one and with assurance I state that no such express authority can be found. The determination arrived at by the majority opinion can in nowise in whole or in part be grounded on sections 26-732 and 26-733, Comp. St. 1929. To do so is to declare the existence of a power in the face of and contrary to a specific prohibition of power.

. In fairness, if power to enter into this contract may be found it may not be found in these statutory provisions but in the statutes defining the general powers of the county board. Specifically it must be found in the third subdivision of section 26-104, Comp. St. 1929. This provision is the following: "To make all contracts and to do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers."

I concede that this provision must be read and interpret-

ed with section 26-732 and that in the light of such reading and interpretation we must conclude that the county board has power to enter into such contracts as are specifically authorized by statute and such as are *necessary* in relation to the property and concerns of the county.

For present purposes I will assume that the board of equalization and its functions are concerns of the county as a body corporate and politic within the meaning of section 26-104. I do not so concede. It appears to me clear that all matters of assessment, equalization, and valuation are matters of legislative concern without control thereover by any official or body except as control has been delegated by the legislature. The legislature has delegated assessment to specifically designated assessment officers and equalization to specific boards. It has conferred none of these powers on counties or county boards.

Assuming therefore that the matter of equalization is a concern of the county in the exercise of its corporate powers was this contract *necessary* to the exercise of that power? It cannot be contended that anything short of necessity shall be the basis for a contract not specifically authorized by statute. To my mind it was clearly not necessary within the definitions of necessity contained in the decisions cited in the majority opinion, with which definitions I am in accord.

There are several reasons why this contract may not be upheld on the ground of necessity. Its express purpose was to furnish the board of equalization, the members of which were inexperienced in valuation of property, with information whereby the property of the county could be properly evalued for taxation purposes.

In the first place, the county had a duly elected assessor, with subordinate assessors, whose duty it was, in the first instance, to properly assess all of the property in the county. There could be no presumption that he or they would not perform their duties fairly, properly and honestly.

In the second place, contrary to the suggestions of the majority opinion, if the assessment made by the assessor

did not reflect the true value of the property to the county the board of equalization was not helpless and in a position where it would be required to rely on that assessment without recourse. It had available the assessor's records, the records of the county surveyor and the county clerk. Moreover by specific statute it could require the attendance of necessary witnesses and the production of books, papers and documents. The legislature attended to the necessities of such situations as this.

In the third place, and though all other grounds upon which it is contended that this contract was not necessary may be disregarded this one must be conclusive, the explicit facts of this case disclose an entire and complete lack of necessity. The appraisal made by C. A. Emery was never used by the board of equalization or any other board, officer or person for any purpose whatever. Not one assessment made in Lincoln county, Nebraska, was adjusted or equalized on the basis of this appraisal. The record is conclusive on this point, and it cannot be said that it was not used because the necessity contemplated at the time the contract was entered into no longer existed when the board of equalization convened. The facts are, as disclosed by the record, that the appraisal departed materially from the assessments as they appeared at the time the contract was entered into and they remained the same after the close of the sitting of the board. The valuation of not one piece of property was equalized with relation to the Emery appraisal.

I submit on the record, moreover, that it could not be used except surreptitiously or in violation of evidentiary rules for any purpose except descriptively by the board or in court. The report contained descriptions and set opposite the properties were valuations. Undoubtedly if Emery had been called he could have testified to the descriptive features of his report but substantially beyond that he could not have gone. He could not have given testimony as to values since his testimony in the record before us discloses that he was not acquainted with the values of real es-

tate in the communities wherein he made his appraisals.

With what reason, justification and logic may it be said that a contract was necessary when toward the accomplishment of the necessity contemplated by the contract the service performed under the contract was never employed?

In paragraph 12 of the majority opinion appears the following: "A county board of equalization as such, therefore, has no authority to enter into any contract to obtain the information, knowledge or evidence necessary to equalize valuations." I am in accord with the statement that the board of equalization is without power to contract to obtain evidence, but I am not in accord with the implication that because of this the board of equalization is without power to obtain evidence. Sections 77-1703 and 77-1704, Comp. St. 1929, provide means for securing evidence.

In paragraph 13 the opinion states the following: "We find that the only authority to contract for such services is specifically placed in the county board." The majority opinion makes no reference to the statute making this specific placement of authority in the county board and I am unable to find any such provision, I think there is none.

In paragraph 16 appears the following: "An applicable rule in the case at bar is that, unless prohibited by statute, a county board may adopt such means as in its judgment shall be necessary in assisting county officers properly to discharge the duties of their offices." This is so clearly wrong when applied to this case as does the majority opinion that it hardly calls for comment. The Nebraska cases cited in the opinion and the statutes cited are all to the opposite effect.

Attention is directed to paragraph 18 of the majority opinion. The paragraph is in part the following: "The statutes of this state, with certain specific exceptions therein provided, confer upon the county board plenary jurisdiction of, and authority to make, all contracts for the county, on any subject within the scope of the powers of such county acting as a body corporate or politic." This, I think, is an unwarranted interpretation and extension of statutory

language, language which is clear and specific and not subject to the given interpretation. As has already been pointed out, the statute (sec. 26-104, Comp. St. 1929) says that the power to contract is dependent, not upon the scope of powers of the county, but upon necessity in the exercise of corporate powers. There is a vast difference between the two terms. As one of many illustrations which could be given, the county board has many functions which can only be performed by the board or the members thereof. Contracts may not be entered into for their performance. They are within the scope of the powers of a county acting as a body corporate and politic.

In paragraph 19 of the opinion it is stated: "Previous decisions of this court have been in conformity with these views, and in this respect the theory of separate entities has not been material in controlling our judgment since the power to bind the county by contracts within the scope heretofore stated rests with the county board whether or not it involves another office, agency or entity." Eight Nebraska cases are cited in support of the statement. I respectfully submit that an examination will disclose that none of the Nebraska cases turns on the theory of separate entities, and further that each turns on the question of necessity in the performance of duties definitely of concern to the county as a body corporate and politic.

The latest case cited is *Campbell v. Douglas County,* 142 Neb. 773, 7 N. W. (2d) 764. That case supports in nowise the majority opinion.

In that case Campbell brought action to recover for services rendered in making an audit and report in conformity with a request by a grand jury. The position taken by the county there, which is pertinent to the inquiry in this case, was that the county had power to require the audit but that it lacked power to contract with an outside party for the service. I quote from the opinion: "Defendant here does not question the power of the board to require that the audit and investigation be made, but takes the position that the law has imposed the performance of these duties upon

the state auditor and county comptroller, and that the defendant is without authority to contract with a private person to perform tasks which the law requires be performed by a public official." This court did not sustain the contention that the county lacked power to contract for the audit. To the contrary as to the state auditor it said: "We conclude that the legislature has not directly nor by implication by the acts cited taken from the counties the power of examination of their own records, nor placed the power to make a comprehensive examination, audit or investigation of county officials, or the county treasurer's office, exclusively in the auditor of public accounts." As to the county comptroller it was stated: "At no place do we find specific requirements that the county comptroller make an audit or examination of the scope and for the purpose of the one here undertaken. Without undertaking to define the outside limits of the duties of the county comptroller, it is patent that the legislature did not place upon that official the duty of making the examination for the defendant's board, which they and the grand jury deemed necessary in the public interest.

"We do not find in the acts cited any authority vesting in the county board any power to require of either named official that they make such examination as defendant's board here determined to have made, nor do we find any direction to those officials to comply with such a request if made."

The sum total of the opinion on this subject is that there was power to order the audit, but there was no public official who was required to make it, hence a contract by the county for the audit was a valid and enforceable obligation. It was one of the necessities contemplated by the grant of power to counties as bodies corporate and politic.

For a discussion of the policy involved in a determination of this case and of division of powers I refer again to the opinion reported, *ante,* p. 300, 9 N. W. (2d) 306, and I respectfully submit that the opinion there is correct and that the one lately setting it aside is erroneous.