REQUESTED BY: Patricia E. Dodson, Deputy Harlan County Attorney
When bids are received from a number of prospective suppliers, based upon the delivered cost to the different townships, respectively, does the County Board have to award the contract to that supplier whose bid is lowest for the total of all townships, or may it award to several bidders, in each instance accepting the lowest bid for delivery to a township?
Under Neb.Rev.Stat. § 39-810 (Reissue 1984), if the County Board wishes to reject all bids, must it reject all bids from all bidders for the total contract?
In awarding contracts, does the "lowest responsible bidder", as stated in Neb.Rev.Stat. § 39-810 (Reissue 1984), mean the lowest bidder in money, or may there be other considerations?
May each member of the Board of Supervisors accept or reject bids for a township, or must the awarding or rejection of bids be done by the County Board as a whole?
The Board may make awards to several lowest bidders if the invitations to bid or bid forms make it clear the contracts will be awarded, in each instance, to the lowest bidders for delivery to the respective townships.
If the invitations to bid and bidding forms make it clear, there would appear to be no reason why all bids for a single township might not be rejected, while going ahead with awards of contracts for the delivery of gravel to the other townships, but we do not believe that was the case in this instance.
If there are to be other considerations, they must be clearly stated in the bidding documents, so that all bidders start from the same point. In the absence of some such identifiable and provable standard, then the award must be awarded on the basis of price.
The question of awarding or rejecting bids must be decided by a majority of supervisors present at a regular or special meeting of the Board, provided that a quorum is present.
With your inquiry, you have sent a sample copy entitled "Official Bid Form". The first part, entitled "Gravel Bid" gives, in words, the details of the bidding requirements, including, inter alia, gravel size, and the concluding statement says "Each of the following townships shall be bid individually for gravel any place within that township." Thereafter, follows a tab sheet format with the townships listed in a vertical column down the left side of the document, and the names of the bidders in a horizontal line across the top. Thus, one can find the bid price per cubic yard received from each bidder for delivery of gravel to each township. Below this tabulation are two further sentences. The first says:
 "All of the proceeding will be determined by the County Board member in whose district the gravel is for and/or by the County Highway Superintendent.
 The Harlan County Board of Supervisors reserves the right to accept or reject any and all bids."
From this we conclude that the intention of the County Board, as understood by all bidders, was that different bidders could be awarded bids for different townships. Thus, T F (one of the bidders) might receive the bid for delivery to Antelope Township, whereas Olsen (another bidder) would receive the bid for delivery to Reuben Township. Severing a contract into several parts would seem to be acceptable. See Schuler v. Board of County Commissioners, 210 Neb. 594,316 N.W.2d 302 (1982).
We believe that the last sentence of the first part of the bid form, which says "Each of the following townships shall be bid individually for gravel any place within that township" indicates an intent to make the bid severable. Stronger and clearer language, would, however, be advisable, since the aforesaid language can be interpreted either way.
There is, however, a practical danger in cutting a bid into too many pieces. If a contract is reduced to too many separate individual parts, prospective bidders may conclude that the parts are not worth their trouble to bid on, in which case the agency letting bids would find that there was not enough bidding activity to guarantee them a favorable price.
As to rejecting all bids, there is no language indicating an intent to make it severable. It would appear from the bid form which was submitted that the County Board, in reserving to itself the right to reject any and all bids, must have meant, in the case of rejection, to reject all bids to all townships. If, however, the Board wished to treat all township bids as separate and severable, we know of no reason why language could not be included, making it clear that the Board could reject any and all bids for a particular township, while, at the same time, awarding bids for other townships to the low bidder or bidders.
We believe that the main purpose for bidding statutes is to set out the intention of the one letting bids in such a clear manner that all bidders will be playing on an even field with no advantage built in for one or another.
In awarding contracts to the "lowest responsible bidder" the bid price, stated in money, is a clearly quantifiable readily understood medium. This does not foreclose other considerations, such as time of delivery. See Root v. Douglas County, 105 Neb. 262 (1920). If other criteria are to be used, they must be so identified in the bid documents that all bidders will know of them, and they must be as easily subject to counting and ranking, by a readily understood standard, as is money. For example, if gravel hardness is to be criterion, then this must be identified in the bid documents. It must state how the measurements will be made, what will be tested, and the method of testing must be in accordance with the accepted scientific principles, which standards must be followed in all instances. This was followed in the specification of gravel size in the sample document submitted.
In addition to the foregoing, the bidding documents must also show how much weight bid price will bear on the awarding of the bids and how much weight will be given to the hardness tests, if used as a criterion in awarding. As may be seen, to use anything but bid price as a criterion for awarding bids is difficult and dangerous.
There is, however, another way to handle it. Just, as in this instance, the bid documents specify the minimum and maximum size of the gravel, and the sieve tests to which they will be subjected, it may also be possible to add similar requirements for rejection or price discounting of gravel which does not meet a certain hardness standard. Then, the only requirement is that the test be a standard, scientifically accepted test, and that the standard be consistently be adhered to.
Your last point deals with whether the acceptance or rejection of bids must be done by the entire County Board. Neb.Rev.Stat. § 23-103 (Reissue 1983) provides:
The powers of the county as a body corporate or politic, shall be exercised by a county board, to wit: In counties under township organization by the board of supervisors, which shall be composed of the town and such other supervisors as are or may be elected pursuant to law; . . . Neb.Rev.Stat. § 39-1402 (Reissue 1984) provides:
 General supervision and control of the public roads of each county is vested in the county board. . . . Neb.Rev.Stat. § 23-265 (Reissue 1983) provides:
The county board shall meet at such times and in such manner as provided by law. Each supervisor shall have special charge of the expenditure of money appropriated out of the county treasury by the board for roads, bridges, and culverts within his district, . . . Neb.Rev.Stat. §23-270 (Reissue 1983) states:
In the absence of any special provision governing the board of supervisors, such board shall be governed by and perform all the duties and have all the powers applicable to county boards as provided by the general laws of this state. Neb.Rev.Stat. § 23-272 (Reissue 1983) provides:
The regular meetings of the county board shall be held on the second Tuesday of January and the first Tuesday after the second Monday in July. Neb.Rev.Stat. § 23-277
(Reissue 1983) provides:
Two-thirds of all the supervisors elected in any county shall constitute a quorum for the transaction of business, and all questions which shall arise at meetings shall be determined by the votes of a majority of the supervisors present, except in cases otherwise provided for.
As early as Morris v. Merrell, 44 Neb. 423 (1895) our court held:
County Commissioners cannot legally transact county business except at a regular session of the county board, or one specially called by the county clerk of which notice is given in the mode provided by law.
In this case, the County Board had met at a time other than a regular, special or adjourned meeting to approve a petition for the location and construction of a ditch. The court's conclusion was that the action of the Board was void.
It would appear that the second sentence of Neb.Rev.Stat. § 23-265 (Reissue 1983) is not in conflict with other sections when it states that each supervisor shall have special charge of the expenditure, in his district, of the money appropriated by the Board. Our interpretation is that the County Board would perform the legislative function of appropriating money, whereas the individual members would perform an executive function in expending that money on the roads in their district.
In Schuler v. Board of County Commissioners, 210 Neb. 594,316 N.W.2d 302 (1982), there is obiter dicta to the effect that responsibility for the maintenance of the county roads is assumed by each of the three Commissioners respectively, and that each, as needed, orders gravel from a gravel supplier. The case was not, however, about the powers of Commissioners, but whether they could make several purchases, each of which was less than the amount required for bidding, but which, in the aggregate, was more. And the record does not show, at all, what the County Board had done in such instances.
In Speer v. Kratzenstein, 143 Neb. 310, 9 N.W.2d 306
(1943), it was held:
"The statutes of this state, with certain specific exceptions therein provided, confer upon a county board plenary jurisdiction of, and authority to make, all contracts for the county, on any subject within the scope of the powers of such county acting as a body corporate or politic."
Since the subject here is a contract for the delivery of gravel, we conclude that it is a contract within the meaning of Speer v. Krazenstein, supra, and that therefore, the decision of whether to enter into it, either by accepting or rejecting bids, must be made by the County Board at a statutory meeting of that Board.
Very truly yours ROBERT M. SPIRE Attorney General Warren D. Lichty, Jr. Assistant Attorney General